# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48593

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, May 2021 Term |
| | ) | |
| v. | ) | Filed: May 11, 2022 |
| | ) | |
| DESIREE ELAINE KARST, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Lansing Haynes, District Judge.

The decision of the district court is <u>reversed</u>. The case is <u>remanded</u> to the district court for further proceedings.

Erik D. Fredericksen, Idaho State Appellate Public Defender, Boise, attorney for Appellant. Jenny Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. Mark Olson argued.

_____

BRODY, Justice.

Desiree Elaine Karst appeals the district court's partial denial of her motion to suppress evidence obtained during a traffic stop. Karst asserts the police sergeant impermissibly extended the traffic stop when he briefly interrupted his traffic-related investigation to contact dispatch and request a drug-dog unit at the scene. The Court of Appeals affirmed the district court's decision, citing its recent decision in *State v. Still*, 166 Idaho 351, 458 P.3d 220 (Ct. App. 2019). This Court granted Karst's petition for review. We overrule *Still*, reverse the district court's decision, and remand this case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 29, 2017, Sergeant Jeremy Hyle with the Kootenai County Sheriff's Office stopped a truck outside Post Falls, Idaho, for multiple minor traffic violations. Sergeant Hyle

observed two occupants in the vehicle, whom he later identified as Jeremy Guydos and Desiree Elaine Karst. Karst was seated in the passenger seat and was not wearing a seatbelt. Sergeant Hyle requested Guydos' license, registration, and insurance. Sergeant Hyle also requested Karst's information. She responded verbally but did not produce any form of identification.

As Sergeant Hyle started to return to his patrol vehicle, he stopped and radioed dispatch to request that a drug-dog unit respond to the scene. According to Sergeant Hyle at the hearing on the motion to suppress, he requested a drug-dog unit because the truck was coming from a suspected drug location and the Guydos' name had come up in connection with drug investigations:

> the house the truck was coming from in the beginning was the suspected drug location that [officers] had intel on, and Mr. Guydos—I actually recognized his name when I met him or when I contacted him that night, that his name had come up in drug investigations and drug intel previously, and then based on the movement that he made, leaning over towards Ms. Karst, that's common with people trying to either obtain or conceal a weapon or evidence of contraband of some sort, and based on all that I wanted [a drug-dog unit] to come run the truck with [a] canine.

The time it took to request the drug-dog unit was about nineteen seconds. After that request, Sergeant Hyle then asked dispatch to run a warrants check on the occupants and returned to his vehicle.

Once Sergeant Hyle returned to his vehicle to write a no seatbelt citation for Karst, he entered her information into his computer system. As he was gathering information, dispatch relayed that Guydos had a suspended Idaho license. Based on this new information, Sergeant Hyle contacted Guydos a second time to ask about the suspended Idaho license. During this inquiry, Sergeant Hyle discovered Guydos did not have insurance on the vehicle.

Sergeant Hyle returned to his patrol vehicle again, this time to write citations against Guydos for driving without privileges and no insurance. At this time, the drug-dog unit arrived at the scene and conducted a dog sniff around the vehicle. Sergeant Hyle completed the citations for Guydos and returned to the no seatbelt citation for Karst when he realized he needed more information from her. Sergeant Hyle exited his patrol vehicle to give the citations to Guydos at the same time the drug dog alerted on the truck.

After the alert, Sergeant Hyle learned Karst admitted to having marijuana in the vehicle, so he shifted his focus to investigating Karst further. When Sergeant Hyle asked Karst to exit the

2

vehicle, she stalled and began shifting items around on her lap. Sergeant Hyle requested Karst hand over anything on her lap, which led to the discovery of a small tin containing methamphetamine. Upon further search of Karst's pockets, Sergeant Hyle found marijuana and paraphernalia. Karst was later arrested and transported to the county jail where more marijuana and paraphernalia were discovered on her person.

Karst was charged with possession of methamphetamine, possession of marijuana, possession of drug paraphernalia, and introducing major contraband into a correctional facility. Karst moved to suppress the drug and paraphernalia evidence. Karst initially challenged the legality of the stop, but subsequently conceded it was legal. Karst also argued Sergeant Hyle unlawfully extended the traffic stop and impermissibly searched her. The district court denied Karst's suppression motion in part. First, the district court found Sergeant Hyle did not unlawfully prolong the traffic stop:

> [Sergeant] Hyle did not "drag his feet," as [Karst] argued, to gain time for the dog to arrive. The investigation of the traffic violations was somewhat complicated given the unusual circumstances of Guydos having a suspended Idaho license along with a valid Florida license, and the fact that Guydos gave some conflicting and confusing answers to some of Hyle's questions. Hyle diligently and thoroughly investigated these violations and meticulously prepared citations for them, all of which took a considerable amount of time. He did not prolong the stop to effectuate the dog sniff. Rather, he continued working on the investigation/citations both before and after the dog arrived. He did not appear to be wasting time and walked quickly between his patrol car and the truck on the few occasions he did so.

As a result, the district court ruled that the methamphetamine found in the tin should not be suppressed. However, the district court held the additional search of Karst's pocket was unlawful and suppressed the marijuana and paraphernalia evidence found there.

Thereafter, Karst entered conditional guilty pleas pursuant to Idaho Criminal Rule 11(a)(2). The State agreed to dismiss the introduction of major contraband charge, while Karst conditionally pleaded guilty to the possession of methamphetamine charge, the possession of marijuana charge, and the possession of drug paraphernalia charge. The possession of marijuana and paraphernalia charges were based on items found on Karst at the jail, not the items found in her pocket which were suppressed. The district court accepted Karst's guilty pleas and sentenced Karst to four years in the penitentiary, with two years fixed, for possession of methamphetamine. She was sentenced to time served on the other charges. The district court suspended her sentence and placed her on probation for two years. Karst timely appealed the district court's partial denial of her motion to

3

suppress. The Idaho Court of Appeals affirmed the district court's decision. This Court granted Karst's petition for review.

## II. STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016)).

When reviewing a motion to suppress, the standard is bifurcated. *Id*. "[T]his Court will defer to the trial court's factual findings unless clearly erroneous. However, free review is exercised over a trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *State v. Samuel*, 165 Idaho 746, 755, 452 P.3d 768, 777 (2019) (quoting *State v. Doe*, 137 Idaho 519, 522, 50 P.3d 1014, 1017 (2002)).

## IV. ANALYSIS

Karst argues the district court erred when it denied her motion to suppress because Sergeant Hyle impermissibly extended the traffic stop when he stopped for nineteen seconds on the way back to his vehicle to contact dispatch and request a drug-dog unit. Although the deviation was slight, Karst maintains the deviation from the traffic stop's mission constituted a violation of her Fourth Amendment right to be free from unreasonable seizures. We agree with Karst.

Karst's challenge calls on us to once again decide how to interpret the United States Supreme Court's decision in *Rodriguez v. United States*, 575 U.S. 348 (2015). We attempted to settle the issue in *State v. Linze*, 161 Idaho 605, 389 P.3d 150 (2016), but since that case was decided, the boundaries of its precedent have been tested in *State v. Pylican*, 167 Idaho 745, 755, 477 P.3d 180, 190 (2020), *reh'g denied* (Oct. 1, 2020) (distinguishing *Linze* because the district court made no findings that any specific amount of time was added to the traffic stop in connection with the dog sniff) and *State v. Hale*, 168 Idaho 863, 868, 489 P.3d 450, 455 (2021) (holding that the officer's questioning regarding permission to operate a vehicle was an ordinary inquiry incident to the traffic stop). The Idaho Court of Appeals has, likewise, had to contend with continued challenges, most notably deciding *State v. Still*, 166 Idaho 351, 458 P.3d 220 (Ct. App. 2019), the precedent it relied upon in this case to affirm the district court's decision.

There clearly is a difference in how this Court and the Idaho Court of Appeals interpret *Rodriguez* and *Linze*. That difference stems from the word "abandonment"—a term introduced

4

during our analysis in *Linze*. Today we reiterate that the proper focus of this case, and cases like it, is whether the dog sniff "prolonged" or "added time to" the traffic stop. Whether the officer "abandoned" the traffic stop is not determinative. We also reiterate that there is no de minimis intrusion justification for prolonging a traffic stop. As we said in *Linze*, the rule of law announced by the Supreme Court of the United States in *Rodriguez* is broad and inflexible. 161 Idaho at 608, 389 P.3d at 153. Unless, and until, *Rodriguez* is overruled, this Court is bound to apply the precedent.

Let us start, again, from the beginning.

### A. Unlawful extension of a traffic stop occurs when an officer's detour prolongs, or adds time to, the original purpose for the stop.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV. When a motorist is pulled over for a traffic violation, a "seizure" occurs, and the motorist is entitled to the protection of the Fourth Amendment. *See Rodriguez*, 575 U.S. at 354. A traffic-related seizure violates the Fourth Amendment if it is prolonged beyond the time reasonably required to complete the "mission" of issuing a ticket. *Id.* at 350–51.

In *Rodriguez*, a K-9 officer pulled over a motorist for driving on the shoulder of a Nebraska highway. *Id.* at 348. After the officer issued a warning, the officer asked for permission to walk his dog around the driver's vehicle. *Id.* at 352. After the driver said "no," the officer instructed him to exit the vehicle, waited for a second officer to arrive, and then retrieved his dog and led him around the vehicle. *Id.* The dog alerted, and a subsequent search of the vehicle led to the discovery of a large bag of methamphetamine. *Id.* All of this prolonged the stop about seven to ten minutes. *Id.* at 353. The driver was subsequently charged with possession with intent to deliver. *Id.*

Rodriguez filed a motion to suppress the drug evidence, arguing the K-9 officer unreasonably prolonged the traffic stop in order to conduct the dog sniff without reasonable suspicion that a crime had been or was about to be committed. *Id.* at 352. The federal district court denied Rodriguez's motion, concluding that "dog sniffs that occur within a short time following the completion of a traffic stop are not constitutionally prohibited if they constitute only de minimis intrusions." *Id.* at 353 (quoting *United States v. Alexander*, 448 F.3d 1014, 1016 (8th Cir. 2006)). The United States Court of Appeals for the Eighth Circuit agreed, holding that the delay constituted an acceptable "de minimis" intrusion on Rodriguez's personal liberty. *Id.* The Supreme

Court of the United States granted certiorari to resolve a division among lower courts on the issue. *Id.* at 353–54.

The Supreme Court, in ruling in favor of Rodriguez, explained that a traffic stop is more analogous to a *Terry* stop than a formal arrest and that the constitutionally permissible duration of the stop is determined by the seizure's "mission":

> A seizure for a traffic violation justifies a police investigation of that violation. "[A] relatively brief encounter," a routine traffic stop is "more analogous to a so-called '*Terry* stop' . . . than to a formal arrest." *Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984), in turn citing *Terry v. Ohio,* 392 U.S. 1 (1968)). See also *Arizona v. Johnson*, 555 U.S. 323, 330 (2009). Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, [*Illinois v. Caballes*, 543 U.S. 405, 407 (2005)], and attend to related safety concerns. See also *United States v. Sharpe*, 470 U.S. 675, 685 (1985); *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."). Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." *Ibid.* See also *Caballes*, 543 U.S. at 407. Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. See *Sharpe*, 470 U.S. at 686 (in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation").

*Rodriguez*, 575 U.S. at 354 (alterations in original) (internal citations omitted).

The Supreme Court explained that an officer's mission when conducting a traffic stop includes ordinary inquiries such as checking the driver's license, checking for outstanding warrants, and inspecting the vehicle's registration and proof of insurance. *Id*. at 355 (citing cases). The *Rodriguez* Court also made it clear that an "[a]n officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." 575 U.S. at 355 (internal citation omitted). The Supreme Court explained that a dog sniff "is a measure aimed 'at detect[ing] evidence of ordinary criminal wrongdoing.' " *Id*. (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40–41 (2000)). Thus, "a dog sniff is not fairly characterized as part of the officer's traffic mission." *Rodriguez*, 575 U.S. at 356. As a result, the Supreme Court held "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures" because "[a] seizure justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably

6

required to complete th[e] mission' of issuing a ticket for the violation." *Id*. at 350 (alterations in original) (quoting *Caballes*, 543 U.S. at 407).

Not long after *Rodriguez* was decided, this Court confronted a Fourth Amendment challenge in a situation where a drug-dog sniff occurred *during* the traffic stop instead of *after* the stop was completed. *See State v. Linze*, 161 Idaho 605, 389 P.3d 150 (2016). In *Linze*, an officer stopped a vehicle for a cracked front windshield. *Id*. at 606, 389 P.3d at 151. After starting warrant checks on the occupants, the officer called for a drug-dog unit. *Id*. When the drug-dog unit arrived, the officer stopped writing the citation and running the warrant checks and began performing a "backup function" for the officer conducting the dog sniff. *Id*. at 607, 389 P.3d at 152. This Court recognized the holding in *Rodriguez* was not confined to cases involving dog sniffs done *after* a completed traffic stop, but rather had a "broad" reach and was "inflexible":

> The United States Supreme Court framed the question before it as "whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." [*Rodriguez*, 575 U.S. at 353]. However, the United States Supreme Court did not restrict its analysis to cases in which the underlying purpose of the traffic stop was completed prior to a drug dog sweep. *Id*. *Instead, the United States Supreme Court reached a much broader holding: "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Id. This rule is both broad and inflexible. It applies to all extensions of traffic stops including those that could reasonably be considered de minimis. Id.* at [356] (rejecting the application of a *de minimis* exception previously adopted by the Eighth Circuit).

*Linze*, 161 Idaho at 608, 389 P.3d at 153 (emphasis added) (internal citations omitted).

In framing the legal issue in *Linze*, the Court explained that the parties had two competing interpretations of *Rodriguez*:

> The parties before this Court have suggested two competing interpretations of the United States Supreme Court's holding in *Rodriguez*. The State suggests that *Rodriguez* allows a seizing officer to deviate from the purpose of a traffic stop up until the time at which the stop should have been reasonably completed. In other words, for each traffic stop there is an objective amount of time within which that stop should reasonably be completed and any unrelated action taken by an officer within that amount of time does not violate the seized parties' Fourth Amendment rights.

> Conversely, Mr. Linze reasons that a deviation from the original purpose of a traffic stop will inevitably lengthen the time needed to complete the original purpose of the seizure, and, accordingly, will result in a stop that "exceed[s] the time needed to handle the matter for which the stop was made." Under Mr. Linze's

suggested interpretation, the timing of an officer's departure from the original purpose of the seizure is irrelevant, it only matters that the officer departed from that purpose.

*Linze*, 161 Idaho at 608, 389 P.3d at 153.

In deciding whose interpretation of *Rodriguez* was correct—the State's or Linze's—the Court adopted Linze's interpretation that "the timing of an officer's departure from the original purpose of the seizure is irrelevant, *it only matters that the officer departed from that purpose*." *Id*. (emphasis added). This Court explained:

> The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer *abandon* the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer *abandons* his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. The new seizure cannot piggy-back on the reasonableness of the original seizure. In other words, unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose, a seized party's Fourth Amendment rights are violated when the original purpose of the stop is *abandoned* (unless that abandonment falls within some established exception).

*Id*. at 609, 389 P.3d at 154 (emphasis added). Ultimately, the Court held the officer violated Linze's Fourth Amendment rights "by delaying the traffic stop for two and a half minutes while performing a back-up function for a drug dog sweep." *Id*.

**B. The Court of Appeals' decision in *State v. Still*, 166 Idaho 351, 458 P.3d 220 (Ct. App. 2019) improperly required "abandonment" of the traffic mission for a stop to become unlawfully extended.**

Focusing on the "abandonment" language emphasized above, the Idaho Court of Appeals recently narrowed *Linze*'s reach when it held that an officer did not unlawfully prolong a traffic stop when the officer made a ten-second radio call for a drug-dog unit. *State v. Still*, 166 Idaho 351, 356–57, 458 P.3d 220, 225–26 (Ct. App. 2019). Karst urges this Court to overturn *Still*, arguing it is "manifestly wrong due to its conflict with Fourth Amendment precedent from the United States Supreme Court and Idaho on the scope of an officer's permissible conduct during a routine traffic stop."

In *Still*, two officers stopped a vehicle and requested the driver's license, registration, and proof of insurance. *Id*. at 352, 458 P.3d at 221. Still provided his license and while he was searching for his registration and proof of insurance, one of the officers called for a drug-dog unit using his on-body radio. *Id*. Still provided his registration and proof of insurance and the officers returned

to their patrol vehicle to run the documents through their system. *Id*. Once they returned to their patrol vehicle, the same officer radioed for the drug-dog unit a second time, which took about ten seconds. *Id*. at 352–53, 458 P.3d at 221–22. Afterwards, the officers began processing Still's information and completing a citation for speeding. *Id*. at 353, 458 P.3d at 222. While completing the citation, the drug-dog unit arrived and alerted on the vehicle. *Id*. A search led to the finding of contraband. *Id*. Still was ultimately charged with unlawful possession of a firearm and unlawful possession of methamphetamine. *Id*. Still sought to suppress the evidence found in the vehicle, but the district court denied the motion. *Id*.

On appeal, Still argued the "traffic stop was unlawfully extended in violation of the Fourth Amendment when [the officer] radioed to [a drug-dog unit] a second time." *Id*. at 354, 458 P.3d at 223. According to Still, the drug-dog unit request "constituted an abandonment of the traffic mission because it was unrelated to the purpose of the stop and 'added time' to Still's detention making it an unreasonable seizure under the Fourth Amendment." *Id*. The Court of Appeals disagreed, explaining, "an abandonment occurs when officers deviate from the purpose of the traffic mission in order to investigate, or engage in safety measures aimed at investigating crimes unrelated to roadway safety for which the officers lack reasonable suspicion." *Id*. at 356, 458 P.3d at 225 (citing *Rodriguez*, 575 U.S. at 354–57; *Linze*, 166 Idaho at 609, 389 P.3d at 154). Applying this rule, and the "Fourth Amendment's reasonableness requirement," the court narrowed the issue to "whether a radio call to inquire if a drug-dog unit is available constitutes an abandonment of the traffic mission so as to amount to an unlawful extension of [a] traffic stop." *Still*, 166 Idaho at 356, 458 P.3d at 225. The court noted that Still "challenge[d] the radio call to the drug-dog officer." *Id*. But, the officer who made the radio call did not conduct the drug-dog sniff, did not take safety measures aimed at conducting the drug-dog sniff, or engage in any other alternate investigation. *Id*. Thus, the court opined: "[a]t most, a radio call to inquire if a drug-dog unit is available is a precursor to an alternate investigation" but "the call itself does not amount to a Fourth Amendment violation." *Id*. The court ultimately held that its decision "comport[ed] with *Rodriguez* and *Linze*." *Still*, 166 Idaho at 356, 458 P.3d at 225. The court stated that "any pause during a traffic stop" does not lead to the conclusion under *Rodriguez* and *Linze* that the officers abandoned the purpose of the traffic stop. "In fact, [the court concluded,] such a conclusion is inimical to the Fourth Amendment's reasonableness requirement," and that a holding to the contrary would be "contrary

9

to United States Supreme Court precedent." *Id.* Ultimately, the court affirmed the denial of Still's motion to suppress after finding Still's detention had not been unlawfully extended. *Id.*

We agree with Karst that *Still* conflicts with the holdings of *Rodriguez* and *Linze* and must be overruled. Going back to *Linze*, the Court held that Linze's interpretation of *Rodriguez* was correct, and, in doing so, introduced the concept of "abandonment" which the Idaho Court of Appeals then used to affirm the denial of Still's motion to suppress:

> We hold that Mr. Linze's interpretation of *Rodriguez* is correct. The United States Supreme Court has plainly established that a traffic stop is a seizure, but it is not an unreasonable seizure under the Fourth Amendment so long as there is a reasonable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981). The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer abandon the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer abandons his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure. In other words, unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose, a seized party's Fourth Amendment rights are violated when the original purpose of the stop is abandoned (unless that abandonment falls within some established exception).

*Linze*, 161 Idaho at 609, 389 P.3d at 154 (internal citation omitted).

Right on the heels of this discussion, the Court reinforced the merits of Linze's interpretation by explaining that the focus of *Rodriguez* is whether an officer's *deviation* from the original purpose of a traffic stop "adds time to" the traffic stop:

> Further enforcing the merits of Mr. Linze's interpretation of *Rodriguez* is the fact that the State's proposed interpretation cannot be reconciled with the United States Supreme Court's analysis. In *Rodriguez*, the United States Supreme Court explicitly rejected an argument advanced by the Government that "by completing all traffic-related tasks expeditiously, an officer can earn bonus time to pursue an unrelated criminal investigation." ——— U.S. at ———, 135 S.Ct. at 1616, 191 L.Ed.2d at 500–01. The gist of this argument was that because there is a set "reasonable" amount of time for each stop, any officer who completes his or her duties under that amount of time can pursue unrelated investigations. In rejecting this argument, the United States Supreme Court noted that "an officer always has to be reasonably diligent." *Id.* The United States Supreme Court reasoned that "[i]f an officer can complete traffic based inquiries expeditiously, then that is the amount of time reasonably required to complete the stop's mission." *Id.* (internal citations omitted). The United States Supreme Court concluded that "the critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket ...

but whether conducting the sniff 'prolongs'—*i.e.*, adds time to—'the stop' " *Id. The United States Supreme Court's intention in* Rodriguez *is thus made clear. The rule isn't concerned with when the officer deviates from the original purpose of the traffic stop, it is concerned with the fact that the officer deviates from the original purpose of the stop at all.*[1] *The State's interpretation of* Rodriguez *violates the United States Supreme Court's underlying conclusion that "an officer always has to be reasonably diligent." Id.*

*State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016) (emphasis added).

The footnote referenced in this passage explained that a dog sniff conducted by a second officer while the first officer pursues the traffic stop does not "add time" to the stop:

The United States Supreme Court is careful to couch its opinion in the "adds time to" framework. It does this in order to allow for dog sniffs that do not add time to the stop (*i.e.*, dog sniffs in which one officer continues to pursue the original objectives of the stop while a second officer conducts a dog sniff).

*State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016).

While the concept of "abandonment" originated in *Linze*, the Idaho Court of Appeals' decision in *Still* fundamentally and impermissibly altered the holding of *Rodriguez.* Nowhere does the majority in *Rodriguez* use—or apply—the concept of "abandonment" to reach its rule. *See Rodriguez*, 575 U.S. 354–58. We explained in *Linze*, and we say it again today, that the critical question according to *Rodriguez* is whether the dog sniff "prolonged" or "added time" to the overall duration of the traffic stop. Contrary to *Still*, the officer does not have to "abandon" the mission of the traffic stop for a Fourth Amendment violation to occur. Merely "detouring" (the word used in *Rodriguez*) or "deviating" (the word used in *Linze*) from that mission, even if the delay is de minimis, runs afoul of the protections of the Fourth Amendment.

Here, after making the traffic stop and initially contacting Karst and the driver, Sergeant Hyle began walking back towards his patrol vehicle. However, instead of continuing activities related to the traffic stop's mission, Sergeant Hyle spent approximately nineteen seconds on his radio with dispatch to request a drug-dog unit. That detour added time to, or prolonged, completing the original purpose for the stop. The fact that Karst was held for a *mere* nineteen seconds more than she should have been matters not for Fourth Amendment purposes—there is no exception for unjustified de minimus intrusions. *See Linze*, 161 Idaho at 608, 389 P.3d at 153; *Rodriguez*, 575 U.S. at 356–57.

While the dissent makes a forceful case for how Karst's challenge ought to be analyzed under the Fourth Amendment, its arguments echo those of the dissents in *Rodriguez.* Justice

Thomas made the case that the majority's rule in *Rodriguez* ignored the touchstone of the Fourth Amendment inquiry—"reasonableness"—because the *overall* duration of the stop was reasonable when only twenty-nine minutes passed from the time the officer stopped Rodriguez until the drug dog alerted to the presence of drugs:

> Because Rodriguez does not dispute that Officer Struble had probable cause to stop him, the only question is whether the stop was otherwise executed in a reasonable manner. . . . I easily conclude that it was. Approximately 29 minutes passed from the time Officer Struble stopped Rodriguez until his narcotics-detection dog alerted to the presence of drugs. That amount of time is hardly out of the ordinary for a traffic stop by a single officer of a vehicle containing multiple occupants even when no dog sniff is involved. [Citing cases where the traffic stops took 22 and 30 minutes.] . . . . The stop here was "lawful at its inception and otherwise executed in a reasonable manner[ ]" . . . . thus, no Fourth Amendment violation occurred.

575 U.S. at 361 (Thomas, J., dissenting) (internal citations omitted).

Here, the dissent relies on an interpretation of the Fourth Amendment which would find no violation if the traffic stop's *overall* duration was "reasonable"—notwithstanding unjustified intrusions that objectively "prolong" or "add time to" the stop:

> Additionally, the inflexibility further etched into the Fourth Amendment by the majority today cannot coexist with the reasonableness that Amendment demands. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).

The dissent's position was soundly rejected by a majority of the Supreme Court of the United States in *Rodriguez*. *See* 575 U.S. at 355–58. The majority in *Rodriguez* made it clear that the Fourth Amendment does not permit officers to earn "bonus time" to engage in unjustified intrusions whenever they complete "all traffic-related tasks expeditiously[.]" *Id*. at 357. Likewise, it does not demand demerits when an officer sneezes or searches for a pen. "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354. Unless, and until, that Court overrules *Rodriguez*, this Court is obliged to follow the precedent. *See James v. City of Boise*, *Idaho*, 577 U.S. 306, 307 (2016) ("The Idaho Supreme Court, like any other state or federal court, is bound by this Court's interpretation of federal law.").

Thus, we hold Sergeant Hyle impermissibly extended the duration of the traffic stop when he requested the drug-dog unit, in violation of the Fourth Amendment. We reverse the district

court's denial of Karst's motion to suppress and remand this case to the district court for further proceedings.

## V. CONCLUSION

The district court's partial denial of Karst's motion to suppress is reversed, and this case is remanded to the district court for further proceedings.

Justices STEGNER and MOELLER, CONCUR.


BEVAN, Chief Justice, dissenting:

I respectfully dissent from the conclusion reached by the majority that a nineteen-second pause to request a drug-dog unit and hear back from dispatch constitutes a violation of the Fourth Amendment. In reaching its decision the Court diminishes the reasoning of Idaho's seminal case on this issue, *State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016). In *Linze*, this Court held:

> The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer *abandon* the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer *abandons* his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure. In other words, unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose, a seized party's Fourth Amendment rights are violated when the original purpose of the stop is *abandoned* (unless that abandonment falls within some established exception).

*Id.* (emphasis added).

*Linze* dealt with whether the time during which the drug detection dog conducted its sweep of the vehicle was an impermissible extension of the original traffic stop. There can be no question that this Court's attention in *Linze* was on whether the officer abandoned the purpose for which reasonable suspicion supported the stop in the first place. The majority now prefers to focus on whether the officer "deviated" from the original purpose of the stop, but I read the facts of *Rodriguez* to require a cessation of the reason for the initial stop (in the form of an abandonment) to trigger the application of its rule. Since an abandonment occurred in *Linze*, the future fruits of the officer's efforts were suppressed as illegal fruits of unconstitutional conduct. *Id*. The majority now claims that the proper focus is whether the dog sniff "prolonged" or "added time" to the stop

and that whether the officer "abandoned" the stop is not determinative. But this reasoning ignores the fundamental truth that absent abandonment by an officer, any time that is "added" to a stop is lawful. A myriad of our "extended stop" cases since *Linze* support this conclusion – they were centered precisely on whether the officer *abandoned* the purpose of the stop. *See*, *e.g.*, *State v. Warren*, ___ Idaho ___, 499 P.3d 423, 427 (2021) (emphasis added) ("Guided by the Supreme Court's holding in *Rodriguez*, we determined Linze's Fourth Amendment rights had been violated because the officer who initiated the traffic stop *abandoned* the traffic stop in order to pursue an investigation not based on reasonable suspicion."); *State v. Pylican*, 167 Idaho 745, 754, 477 P.3d 180, 189 (2020) (emphasis added) ("*Rodriguez* stands for the proposition that the underlying safety concerns which justify exit orders do not extend to general criminal investigations that are undertaken when the purpose of the lawful stop has been *abandoned*.").

The majority also claims that "[n]owhere does the majority in *Rodriguez* use—or apply—the concept of 'abandonment' to reach its rule." While I agree the word "abandon" does not appear in the *Rodriguez* majority opinion, I respectfully disagree that the notion of abandonment was not applied as the underpinning of the rule which holds:

> [T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, . . . and attend to related safety concerns. . . . *See also Florida v. Royer,* 460 U.S. 491, 500 (1983) (plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."). . . . Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.

*Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (most citations omitted). To me, when an officer forsakes the initial justification for the traffic stop's "mission," or moves on from the reasonable completion of the tasks tied to the stop, the officer has *abandoned* the initial reason for the stop. Idaho's courts' use of that term to describe this rule is thus more than an errant misuse of language; it is a precise descriptor of when the inflexible *Rodriguez* rule is to be applied.

The word "abandon" has many definitions. For example, the term is defined in Merriam-Webster as "to cease intending or attempting to perform."[1] It also means "to leave a place, thing,

---

[1] *Abandon*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/abandon (last visited Sept. 9, 2021).

14

or person, usually forever."[2] In other contexts, this Court has explained that "[t]here can be no abandonment without an intention to abandon." *Union Grain & Elevator Co. v. McCammon Ditch Co.*, 41 Idaho 216, 223, 240 P. 443, 445 (1925). In *Linze*, it was clear the officer abandoned the traffic mission. The officer left the patrol car and provided back-up to a second officer while the dog performed the drug-sniff. *Linze*, 161 Idaho at 607, 389 P.3d at 152. Likewise, the officer in *Rodriguez* abandoned the stop; once the officer handed Rodriguez the written warning, the initial reason for the stop was over and he abandoned that reason by taking further investigative steps. *Rodriguez*, 575 U.S. at 352. Thus, the majority's disregarding abandonment as the crux of these decisions is to engage in a semantic façade.

This point is underscored further by noting that two of the three justices who today assert that "[w]hether the officer 'abandoned' the traffic stop is not determinative," certainly considered it to be so in an earlier dissent:

> It is axiomatic that the time to complete the stop was extended by the time it took for the deputy to order Pylican from her vehicle and escort her to the area near the front of the deputy's vehicle. During this time, the deputy had *abandoned* both purposes of the stop, i.e., the traffic stop and Pylican's presence in the storage facility. While I recognize that the period of time in which the deputy *abandoned* the purposes of the stop was minimal, the standard recognized in both Rodriguez and Linze is inflexible. Any amount of time in which the purpose of the stop is *abandoned* for "[o]n-scene investigation into other crimes" impermissibly extends the time needed to complete the original purpose of the stop, however otherwise valid. *See Rodriguez*, 575 U.S. at 356, 135 S.Ct. 1609.

*Pylican*, 167 Idaho at 757, 477 P.3d at 192 (Stegner, J. and Brody, J., dissenting) (emphasis added). Indeed, in both *Pylican* and *Linze*, the crucial focus on abandonment was determinative.

Abandonment was referenced again in a recent concurrence to *State v. Warren*: "When this purpose was abandoned to investigate Steven's potential violation of a civil protection order and a criminal no contact order prohibiting him from having contact with Jennifer, officers possessed no reasonable suspicion specific to Jennifer which allowed them to eventually search both her person and her belongings." *Warren*, ___ Idaho at ___, 499 P.3d at 429 (Stegner, J., concurring).

In 2020, this Court recognized the important distinction between unconstitutionally prolonging a stop and a permissible extension in *State v. Pylican*, 167 Idaho 745, 754, 477 P.3d

---

[2] *Abandon*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/abandon (last visited Sept. 9, 2021).

180, 189 (2020). We focused on the fact that a deputy made a lawful traffic stop, and before the deputy had checked any of Pylican's information, a K-9 officer arrived to begin a dog sniff. *Id.* at 749, 477 P.3d at 189. After the deputy spoke to the K-9 officer—but before the traffic stop was complete—the deputy ordered Pylican and her passenger out of the vehicle. *Id.* Critically, the K-9 officer had reasonable suspicion of criminal activity independent of the reason for the stop when he ordered Pylican from the vehicle. *See id.* at 751, 477 P.3d at 186. Before exiting the vehicle, Pylican began to question the deputy about why she was being asked to exit the vehicle and when she could use her phone. *Id.* at 755, 477 P.3d at 190. When Pylican did step out of the vehicle, the deputy ran her information and resumed discussions with her about the reason for the stop while the K-9 officer ran the dog around the vehicle. *Id.* This Court explained *Pylican* was distinguishable from both *Rodriguez* and *Linze* because the duration of the stop was not prolonged from the sniff but extended from Pylican questioning the deputy's command to exit the vehicle. *Id.* In addition, we held that the stop was not prolonged by an independent investigation supported by reasonable suspicion. *Id.* at 754, 477 P.3d at 189. "*Rodriguez*…was about the timing of the officer's actions," and not a bar to officers investigating crimes unrelated to a valid traffic stop. *Id.*

This Court mirrored *Pylican* in our recent decision in *State v. Hale*, 168 Idaho 863, 489 P.3d 450 (2021). There, the question presented was whether a delay during a traffic stop to investigate contradictory information provided by the driver amounted to a violation of *Rodriguez*. In holding that such a delay was permissible, we stated:

> Our holding does not give law enforcement carte blanche to investigate every piece of information provided as part of a traffic stop ad infinitum while awaiting an inbound drug-detecting canine unit. Rather, the lawful duration of a traffic stop is tethered to "when tasks tied to the traffic infraction are—*or reasonably should have been*—completed."

*Id.* at 869, 489 P.3d at 456 (quoting *Rodriguez*, 575 U.S. at 354 (emphasis in original)).

Today, with a broad stroke, the majority reaches a different result than in *Pylican* based not on whether Sergeant Hyle impermissibly abandoned the original purpose of the stop—he certainly didn't—but whether he added time to the traffic stop by waiting nineteen seconds for dispatch to respond to his request for a drug dog unit in the middle of the traffic stop. But viewed in light of *Pylican* and *Hale*, neither *Linze* nor *Rodriguez* compel the result the majority reaches here. The facts of both *Linze and Rodriguez* turned on officers who had completed their missions and continued the detention to conduct a dog-sniff. Alternatively, here, the initial stop was

16

uncompleted and ongoing when Sergeant Hyle asked for a K9 unit and waited on dispatch. The sergeant's conduct was lawful based on *Pylican* and *Hale*. The brief nineteen-second delay is insufficient to establish that the traffic stop was abandoned or that it was unreasonably prolonged while Sergeant Hyle waited for a response from dispatch. There was no abandonment and thus no unconstitutional delay.

Additionally, the inflexibility further etched into the Fourth Amendment by the majority today cannot coexist with the reasonableness that Amendment demands. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The Supreme Court has defined reasonableness "in objective terms by examining the totality of the circumstances[.]" *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). This examination also considers "the traditional protections against unreasonable searches and seizures afforded by the common law at the time of the framing[.]" *Atwater v. Lago Vista*, 532 U.S. 318, 326 (2001). When the common law has not provided a clear answer, Supreme Court precedents have "analyzed a search or seizure in light of traditional standards of reasonableness by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Virginia v. Moore*, 553 U.S. 164, 171 (2008) (internal quotation marks omitted).

"To be reasonable is not to be perfect[.]" *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014). Engraining the majority's inflexible rule deeper into our jurisprudence makes the possibility all too likely that "a traffic stop made by a rookie could be executed in a reasonable manner, whereas the same traffic stop made by a knowledgeable veteran officer *in precisely the same circumstances* might not, if in fact his knowledge and experience made him capable of completing the stop faster." *Rodriguez*, 575 U.S. at 359 (Kennedy, J., dissenting). The rule the Court adopts today is unworkable in the real world. I await with interest the future cases we may see involving a one-second delay because the officer sneezed, or a few seconds of additional time necessary for an officer to find a pen to write a citation.

The dog sniff at Karst's vehicle did not extend the stop—the response from dispatch did. Had dispatch responded immediately, there would not have been a nineteen-second pause. By inquiring into the duration of the stop to determine the precise moment a pause constitutes a prolonging, this rule will penalize officers for factors outside their control. At a separate traffic stop, with a different dispatcher, an officer could conduct the *same* dog sniff and the majority's

rule would uphold the results. This is not the bright line rule the majority contends, but an arbitrary one that could have unpredictable consequences; it rewards expedience and abandons reasonableness.

The first question to ask in any of these cases is whether the officer abandoned the mission or purpose for the initial detention. If not, then the officer's conduct is not a per se violation of the Fourth Amendment. From there, the conclusion I would reach is that a stop that is briefly lengthened by a short pause is permissible so long as the reason for the stop is not abandoned by conduct that *measurably extends the stop*. *See United States v. Everett*, 601 F.3d 484, 491 (6th Cir. 2010) (explaining that a "measurable" delay is one that is "significant," i.e., that *unreasonably prolongs* the stop). This approach is one many other jurisdictions have also taken when faced with reconciling *Rodriguez*. *See, e.g.*, *State v. Cassady*, 56 N.E.3d 662, 668 (Ind. App. 2016) (holding that a deputy did not violate a motorist's Fourth Amendment rights when a dog-sniff was performed while a deputy was waiting on a response from dispatch for a license check); *State v. Sosa*, 427 P.3d 448, 451 (Utah Ct. App. 2018) (distinguishing a request for a dog sniff and the resulting alert that occurred during the traffic stop from *Rodriguez*); *State v. Allen*, 779 S.E.2d 248 (Ga. 2015) (holding that a dog sniff conducted while the officer awaited the return of a computer records check does not prolong the stop). Following these authorities, and for the reasons stated above, I would affirm the district court.

Justice BURDICK, CONCURS.