**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49123**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed:  September 22, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| SERGIO ROEL GALINDO, | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County.  Hon. Benjamin J. Cluff, District Judge.

Judgment of conviction for trafficking in methamphetamine, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.  Kiley A. Heffner argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.  Kenneth K. Jorgensen argued.

_____

BRAILSFORD, Judge

Sergio Roel Galindo appeals from the judgment of conviction entered on his conditional guilty plea to trafficking in methamphetamine, Idaho Code § 37-2732B(a)(4).  Galindo challenges the district court's denial of his motion to suppress evidence obtained during a traffic stop.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Following an evidentiary hearing on Galindo's suppression motion, the district court made the following factual findings:  While patrolling in Twin Falls County, Officer Mandzic observed Galindo commit a traffic violation and initiated a lawful traffic stop.  When Officer Mandzic approached the vehicle, Galindo almost immediately complained he was ill, experiencing a headache, body aches, and shaking.  Officer Mandzic inquired whether Galindo wanted an

1

ambulance, and he said that he did. While Officer Mandzic was speaking with Galindo, other officers arrived on the scene, and one called for an ambulance.

After Officer Mandzic collected Galindo's driving information, Officer Mandzic returned to his patrol vehicle and began the process of issuing a traffic citation to Galindo. As Officer Mandzic was processing the citation, the paramedics arrived and began treating Galindo inside the ambulance. When Officer Mandzic completed the citation, the paramedics were still treating Galindo inside the ambulance. Because Galindo was still receiving medical treatment, Officer Mandzic did not immediately serve the citation on Galindo. Instead, Officer Mandzic remained in his patrol vehicle and began to write his narrative of the traffic stop.

While Officer Mandzic was in his patrol vehicle and Galindo was receiving medical attention, Officer Christensen looked into the ambulance and asked Galindo if he could search the vehicle stating, "Hey Sergio, do you mind if I search your car real quick to make sure there is nothing in it?" Galindo responded, "Um, I don't mind. It's Stephanie's car. She gave it to me this morning."[1]

When Officer Mandzic exited his patrol vehicle with the completed citation, Galindo was still in the ambulance. After the paramedics had completed their examination of Galindo and he had exited the ambulance, Officer Mandzic began explaining the citation to Galindo and the steps necessary to resolve it. While Officer Mandzic was explaining the citation to Galindo, Officer Christensen found a digital scale in the vehicle with visible methamphetamine residue.

Shortly after Officer Christensen found the scale and methamphetamine residue, Officer Mandzic finished explaining the traffic citation to Galindo and answering his questions. As Galindo reached for the citation, Officer Mandzic did not give it to him but instead asked him to wait until Officer Christensen finished searching the vehicle. Roughly six seconds after asking Galindo to wait, Officer Christensen found more methamphetamine in the pocket of a coat in the vehicle. As a result, Galindo was arrested.

After this encounter, the State charged Galindo with trafficking in methamphetamine, and he filed a suppression motion. Galindo argued that the officers unlawfully extended the stop,

---

[1] Galindo did not own the vehicle. The district court, however, found Galindo had a legitimate privacy interest in the vehicle despite not owning it, and the State does not challenge that finding on appeal.

2

rendering his consent to the vehicle's search invalid.[2]  At the evidentiary hearing, Officer Mandzic, Officer Christensen, and Galindo testified.  The district court also admitted into evidence the traffic citation and the videos from the officers' body cameras.  Following the suppression hearing, the court denied the motion, ruling Officer Mandzic did not impermissibly extend the length of the traffic stop.  The court reasoned:

> After completing the ticket, Officer Mandzic remained in his vehicle for several more minutes writing his incident notes.  The entire time that Officer Mandzic was in his vehicle following the printing of the ticket, [Galindo] was in the ambulance and under the care of paramedics.  Indeed, when Officer Mandzic exited his vehicle [Galindo] was still receiving medical attention.  Officer Mandzic made the decision not to disrupt [Galindo's] medical care in an attempt to explain the ticket, describe how to pay for or resolve the ticket, and to answer any questions that [Galindo] might have.  Importantly, [Galindo] had complained of a headache and shaking only several minutes prior.  Officer Mandzic's decision not to interrupt the medical examination of [Galindo] to explain the traffic citation was entirely reasonable and appropriate under the circumstances.

Galindo subsequently pled guilty conditionally to trafficking in methamphetamine and reserved his right to appeal the denial of his suppression motion.  Galindo timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated.  When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found.  *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).  At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court.  *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Galindo argues the district court erred in denying his suppression motion because "Officer Mandzic unlawfully extended the traffic stop after completing the traffic stop's purpose," thereby

---

[2]    Galindo also argued the search of his vehicle exceeded the scope of his consent.  He does not raise that argument on appeal, however.

rendering Galindo's subsequent consent to the vehicle's search invalid. A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998).

Authority for a traffic-related seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015); *State v. Linze*, 161 Idaho 605, 609, 389 P.3d 150, 154 (2016). Consequently, a traffic-related seizure violates the Fourth Amendment if prolonged beyond the time reasonably required to complete the "mission" of issuing a ticket. *Rodriguez*, 575 U.S. at 350-51; *State v. Karst*, 170 Idaho 219, 223, 509 P.3d 1148, 1152 (2022). In other words, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 U.S. at 350; *see Karst*, 170 Idaho at 224, 509 P.3d at 1153; *Linze*, 161 Idaho at 608, 389 P.3d at 153.

Galindo asserts the United States Supreme Court's decision in *Rodriguez* and the Idaho Supreme Court's interpretation of that case in *Linze* (as later clarified in *Karst*) control the analysis of whether Officer Mandzic unlawfully extended the traffic stop. Relying on these cases, Galindo asserts that the traffic stop's purpose was to prepare a traffic citation and that Officer Mandzic "achieved" that purpose when he "printed out" the completed citation. Based on these assertions, Galindo argues Officer Mandzic unlawfully extended the traffic stop without reasonable suspicion when he retained Galindo's identification and the printed citation. According to Galindo, his continued detention after Officer Mandzic printed the citation is a new seizure under the Fourth Amendment without reasonable suspicion, which rendered Galindo's consent to the vehicle's search invalid. To avoid this alleged unlawful detention, Galindo contends "Officer Mandzic should have interrupted [Galindo's] medical examination to return his identification and the completed traffic citation."

In response, the State does not dispute that *Rodriguez* guides the analysis of whether Officer Mandzic unlawfully extended the traffic stop. Rather, it argues "Officer Mandzic's

4

authority for the seizure did not end before Galindo granted consent to search because the tasks related to the traffic stop were not in fact, nor reasonably should have been completed by then." In support, the State cites *Rodriguez* for the proposition that whether Officer Mandzic unlawfully extended the stop turns on "when tasks tied to the traffic infraction are--*or reasonably should have been*--completed." The State argues the tasks necessary to complete a traffic infraction include "service of the citation, return of Galindo's documentation, and explanation of how to address the citation." Further, it argues that "the issue turns on the constitutional reasonableness of waiting until after medical treatment and evaluation was [sic] complete before serving the citation" and that "the stop was not improperly extended merely because service of the citation was delayed by events beyond [Officer Mandzic's] control, namely Galindo's medical needs."

As an initial matter, we address the parties' dispute about when the traffic stop's purpose is complete--when Officer Mandzic printed the citation, as Galindo argues, or after Officer Mandzic served the citation, returned Galindo's documents, and explained the citation, as the State argues. We agree with the State. A traffic stop's purpose to cite a driver for a traffic violation is not complete simply when the officer prints the citation. Rather, serving the citation and the accompanying tasks of returning the driver's documentation and explaining the citation are necessary to complete the traffic stop's purpose. Once an officer prepares, serves, and explains a traffic citation, the officer has issued that citation and completed the traffic stop's purpose. *Cf. Rodriguez*, 575 U.S at 352 (noting officer "issued" warning by delivering written warning, returning documents, and explaining documents). Accordingly, at issue is whether Officer Mandzic unlawfully prolonged the traffic stop by delaying issuing the traffic citation until the paramedics finished treating Galindo.

Unlike this case, the cases on which Galindo relies--*Rodriguez*, *Linze*, and *Karst*--address whether an officer's conduct related to a drug-dog sniff unlawfully extended a traffic stop. In *Rodriguez*, an officer stopped Rodriguez for a traffic infraction. *Id.* at 351. After the officer issued Rodriguez a written warning, the officer detained Rodriguez for seven or eight minutes to perform a drug-dog sniff, during which the dog alerted. *Id.* at 352. A search of the vehicle revealed a large bag of methamphetamine, which Rodriguez moved to suppress, arguing the officer "prolonged the traffic stop without reasonable suspicion in order to conduct the dog sniff." *Id.* The district court denied Rodriguez's motion and the Eighth Circuit affirmed. *Id.* at 348.

On appeal, the United States Supreme Court framed the issue as "whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop." *Id.* at 350. The Court ruled that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'--to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* at 354 (citation omitted). "Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose." *Id.* (quotations and brackets omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are--or reasonably should have been completed," *id.* at 354, and a traffic stop "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* at 350-51 (quotations and brackets omitted). The Court held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* at 350.

In *Linze*, the Idaho Supreme Court interpreted *Rodriguez* to determine whether an officer unlawfully extended a traffic stop for purposes of a drug-dog sniff. In that case, an officer stopped a vehicle in which Linze was a passenger for a traffic violation and called for a drug dog. *Linze*, 161 Idaho at 606, 389 P.3d at 151. After the drug dog and its handler arrived on the scene, the officer stopped writing the citation "for two and a half minutes while performing a back-up function for a drug dog sweep." *Id.* at 609, 389 P.3d at 154. During the sweep, the dog alerted; a search of the vehicle revealed drug paraphernalia; and Linze admitted consuming methamphetamine. *Id.* at 607, 389 P.3d at 152. The district court denied Linze's suppression motion, and he appealed. *Id.*

Addressing Linze's appeal, the Idaho Supreme Court noted the broad holding in *Rodriguez* that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* at 608, 389 P.3d at 153. It concluded that "this rule is both broad and inflexible [and] applies to all extensions of traffic stops including those that could reasonably be considered *de minimis*." *Id.* Interpreting *Rodriguez*, the Court ruled that:

> The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer abandon the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer abandons his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the

6

Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure. In other words, unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose, a seized party's Fourth Amendment rights are violated when the original purpose of the stop is abandoned (unless that abandonment falls within some established exception).

*Linze*, 161 Idaho at 609, 389 P.3d at 154. Further, the Court noted that "the rule isn't concerned with when the officer deviates from the original purpose of the traffic stop, it is concerned with the fact that the officer deviates from the original purpose of the stop at all." *Id.*

Thereafter in *Karst*, the Idaho Supreme Court again addressed whether an officer unlawfully extended a traffic stop for a drug-dog sniff. In that case, the officer made a traffic stop and as he "started to return to his patrol vehicle, he stopped and radioed dispatch to request that a drug-dog unit respond to the scene." *Karst*, 170 Idaho at 221, 509 P.3d at 1150. "The time it took to request the drug-dog unit was about nineteen seconds." *Id.* Determining whether this nineteen-second delay violated the Fourth Amendment, the Court "reiterate[d] that the proper focus of this case, and cases like it, is whether the dog sniff 'prolonged' or 'added time to' the traffic stop" and that "there is no de minimis intrusion justification for prolonging a traffic stop." *Id.* at 223, 509 P.3d at 1152. Clarifying *Linze*, the Court ruled that "the officer does not have to 'abandon' the mission of the traffic stop for a Fourth Amendment violation to occur." *Karst*, 170 Idaho at 227, 509 P.3d at 1156. Rather, "[m]erely 'detouring' . . . or 'deviating' . . . from that mission, even if the delay is de minimis, runs afoul of the protections of the Fourth Amendment." *Id*.

As noted, *Rodriguez*, *Linze*, and *Karst* each address whether an officer's conduct related to a drug-dog sniff unlawfully extended a traffic stop. Likewise, the Idaho appellate decisions applying the analysis established in these cases generally have addressed a drug-dog sniff or officer safety. *See, e.g.*, *State v. Riley*, ___ Idaho ___, ___, 514 P.3d 982, 988 (2022) (addressing issue of whether officer deviated from traffic stop's initial purpose during drug-dog sniff and relying on *Rodriguez*, *Linze*, and *Karst*); *State v. Wharton*, 170 Idaho 329, 335, 510 P.3d 682, 688 (2022) (holding practice of checking passengers for warrants during traffic stop "is a negligibly burdensome precaution for officer safety" which does not violate Fourth Amendment). In this case, neither a drug-dog sniff nor officer safety is at issue. Regardless, Galindo argues that the "order denying [his] suppression motion was inconsistent with *Rodriguez*" and that "the district court conducted an ad hoc 'reasonableness' analysis," which ignored the "specific framework" *Rodriguez* identified for "determining 'reasonableness' in cases like this one." Galindo, however, fails to cite any authority for the proposition that *Rodriguez* establishes a "specific framework for

7

determining 'reasonableness' in cases like this one," despite that this case does not challenge a delay caused by the officer's conduct for purposes of the drug-dog sniff or for officer safety. Further, Galindo also fails to cite any authority for the proposition that the conduct of a defendant or a third party, which prolongs a traffic stop, violates the Fourth Amendment's protection against unreasonable seizures. Rather, the Fourth Amendment protects against governmental intrusions. *See, e.g.*, *Rodriguez*, 575 U.S. at 353 (framing legal issue as "whether police routinely may extend an otherwise-completed traffic stop"); *Katz v. United States*, 389 U.S. 347, 350 (1967) (providing Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion"); *Camara v. Mun. Ct. of City & Cty. of San Francisco*, 387 U.S. 523, 528 (1967) (providing Fourth Amendment's "basic purpose . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials").

Regardless, the Idaho Supreme Court case *State v. Pylican*, 167 Idaho 745, 477 P.3d 180 (2020), involved a drug-dog sniff and is instructive in this case. In that case, a deputy stopped Pylican for a traffic violation after she entered and exited a storage facility after hours. *Id.* at 748-49, 477 P.3d at 183-84. Before the deputy checked Pylican's information, a drug dog arrived, and the deputy ordered Pylican to exit the vehicle for the safety of the officers during the drug-dog sniff. *Id.* at 749, 477 P.3d at 184. For approximately two minutes, the deputy questioned Pylican about her presence in the storage facility, and during this conversation, the deputy denied Pylican's request to call her husband. *Id.* Meanwhile, the drug dog alerted, and drug paraphernalia was located during a search of Pylican's vehicle. *Id.* Granting Pylican's suppression motion, the district court ruled the deputy had unlawfully extended the stop by ordering Pylican to exit the vehicle and by asking her about her presence at the storage facility. *Id.* at 750, 477 P.3d at 185.

On appeal, the Idaho Supreme Court addressed the issue of whether "the order for Pylican . . . to exit the vehicle unconstitutionally extended the stop." *Id.* at 751, 477 P.3d at 186. Distinguishing *Rodriguez* and *Linze*, the Court concluded the deputy had reasonable suspicion to question Pylican about her presence at the storage facility, *Pylican*, 167 Idaho at 751-52, 477 P.3d at 186-87, and that Pylican, not the deputy, extended the stop:

> [A]ny extension to the duration of the stop in this case was not a result of the dog sniff itself; rather, the extension was caused by Pylican questioning the order to exit the vehicle and whether she could use a phone. . . . [I]t is clear that it was Pylican who extended the duration of the stop.

8

*Id.* at 755, 477 P.3d at 190. Based on this conclusion, the Court stated, "It should be axiomatic that a defendant cannot claim that a stop was unconstitutionally prolonged *by the State* when any delay was a consequence of her own conduct." *Id.*

Similar to *Pylican*, Officer Mandzic did not extend the duration of the traffic stop or delay completing its purpose. Rather, Galindo's request for and receipt of medical care delayed the traffic stop. Because Officer Mandzic's conduct did not prolong the stop, Galindo's assertion that the stop was unconstitutional fails. Moreover, we reject Galindo's argument that Officer Mandzic should have interrupted Galindo's medical care and agree with the district court that Officer Mandzic's decision to wait until the paramedics were done treating Galindo and until after he exited the ambulance was reasonable under the circumstances. That Galindo's medical examination was purportedly "not a private medical consultation"; his "symptoms were not appropriate for the emergency room"; and the paramedics "were only checking his blood pressure [and] not conducting extensive medical tests" are not bases to conclude Officer Mandzic's decision was unreasonable, contrary to Galindo's assertions.[3] Because Galindo's medical treatment and not Officer Mandzic's conduct prolonged the stop, both Galindo's assertions that he was unlawfully detained when he consented to the vehicle's search and that his consent was invalid for that reason fail.

## IV.

## CONCLUSION

The district court did not err by denying Galindo's suppression motion. Accordingly, we affirm his judgment of conviction.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.

---

[3]     Galindo acknowledges that "a suspect's medical needs" could "legitimately prolong the duration of a traffic stop," such as when he is unconscious or in immediate distress. We decline, however, to impose on an officer the obligation to interrupt a medical examination in an attempt to evaluate its seriousness, as Galindo's argument suggests an officer must.