# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49460

STATE OF IDAHO,      )
          )
   Plaintiff-Respondent,   )     **Boise, June 2022 Term**
          )
v.          )     **Opinion filed: September 19, 2022**
          )
NATALIE J. MIRAMONTES,   )     **Melanie Gagnepain, Clerk**
          )
   Defendant-Appellant.   )
          )

---

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Stephen S. Dunn, District Judge.

The district court's order denying motion to suppress is <u>reversed,</u> the judgment of conviction is <u>vacated</u>, and the case is <u>remanded</u>.

Eric D. Fredericksen, Idaho State Appellate Public Defender, Boise, attorney for Appellant. Sally Cooley argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. Mark Olsen argued.

---

BEVAN, Chief Justice,

This case comes to the Court on a petition for review from the Idaho Court of Appeals. Probation officers detained Natalie Miramontes while conducting a residence check on a female probationer, Christine Evans. During the detention, probation officers searched Miramontes' purse and found suspected drug paraphernalia. Probation officers paused the search and contacted Pocatello police. Once police arrived, officers resumed the search and, inside a pantry converted to a spare bedroom, they uncovered more drug paraphernalia and a substance that tested presumptively positive for methamphetamine. Miramontes told Pocatello police she had been sleeping inside the spare room. Miramontes moved to suppress all evidence found during her detention. The district court denied her motion. Miramontes entered a conditional guilty plea and reserved her right to appeal. She appealed, and the Court of Appeals affirmed her conviction. Miramontes petitioned for review with this Court, which was granted. On appeal, Miramontes asserts the district court erred when it denied her motion to suppress because officers searched her

1

purse without reasonable and articulable suspicion. She also alleges the items found during the later search of the spare bedroom would not have been inevitably discovered without the unlawful search of her purse. For the reasons below, we reverse the district court's decision and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Probation officers with the Idaho Department of Correction entered Christine Evans' residence in Pocatello, Idaho at about 9:00 p.m. The probation officers were there to conduct a probationary check on Evans. Evans participated in the Bannock County Mental Health Court, a treatment court that Evans voluntarily entered in exchange for her guilty plea to a felony charge of possession of methamphetamine with intent to deliver. Evans' probation agreement allowed probation officers Myler and LaVallee to enter Evans' home, verify living arrangements, check for contraband, and confirm compliance with the terms of her probation.

On entering the home, Myler suspected other people were inside and proceeded to the back of the home to verify. As she did, she saw a person exiting through the back door, hunched over and carrying a bag. Myler ordered the person to "stop" three times. The last time Myler shouted the command, the person complied. When Myler approached, the officer saw the person, later identified as Miramontes, drop what she was carrying in the backyard. Myler ordered Miramontes to reenter the residence, identify herself, and explain why she was at Evans' home. Miramontes told Myler she was staying with Evans in a spare room.

While Miramontes complied with Myler's directive to reenter the home, LaVallee collected the items Miramontes dropped outside on the ground. LaVallee brought three or four items inside and placed them on the washing machine. Myler asked Miramontes for her identification card. Miramontes moved to retrieve her identification, but Myler stopped her and said LaVallee would retrieve the identification card for her. As a result, Miramontes told the officers her identification card was in her pink/salmon floral print bag, which LaVallee opened. When LaVallee opened the bag, he saw what appeared to be drugs or drug paraphernalia in the bag. Once the paraphernalia was discovered, both probation officers stopped searching and called the Pocatello Police Department.

The probation officers detained Miramontes and Evans until Pocatello police arrived. When police arrived, Myler and LaVallee searched Evans' bedroom and a pantry converted into a spare room that Miramontes also told Pocatello police officer Leach she was staying in. Among

other belongings uncovered in the room, Leach found drug paraphernalia (baggies, pipes, syringes, and a torch) and a substance that tested presumptively positive for methamphetamine. Leach also inspected the bags LaVallee had collected outside where Miramontes dropped them and discovered another bag with a wallet containing Miramontes' identification and a syringe with a dark substance.

Leach spoke to Miramontes and Evans separately. Leach gave Miramontes her *Miranda*[1] rights and asked her which of the belongings in the spare bedroom belonged to her. After identifying her items, Miramontes was arrested.

## B. Procedural Background

The State charged Miramontes with one felony count of possession of methamphetamine with intent to deliver under Idaho Code section 37-2732(a)(1)(A). Miramontes pleaded not guilty and moved to suppress the evidence, arguing Myler unreasonably seized her outside of Evans' residence. In her written motion, Miramontes sought to suppress the "[e]vidence obtained through an illegal seizure." The written motion was silent about any alleged illegal search.

The district court held an evidentiary hearing on the motion. Officers Myler, LaVallee, and Leach all testified. The district court ordered the parties to submit post-hearing briefing. After reviewing these briefs, the district court scheduled a second hearing to clarify the parties' positions. In particular, the district court asked whether the State charged Miramontes based on the evidence found in her purse or in the spare bedroom in which she was staying—because "there was a temporal difference between evidence that was discovered by officers[.]" Miramontes contended that if the district court found the initial search of her purse illegal, all evidence found in the spare bedroom was "fruit of the poisonous tree." The court ordered additional briefing from the parties.

After reviewing this supplemental briefing, the district court denied Miramontes' suppression motion. Following the denial of her suppression motion, Miramontes entered a conditional plea of guilty under Idaho Criminal Rule 11(a)(2) to possession of methamphetamine and reserved her right to appeal. The Idaho Court of Appeals affirmed the district court's decision. Miramontes then timely petitioned this Court for review, which we granted.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

## II. STANDARDS OF REVIEW

"'When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court.'" *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016)). When this Court reviews a district court's order granting or denying a motion to suppress, "'the standard of review is bifurcated.'" *Id.* (quoting *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009) "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id.* (citing *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005)). Even so, "this Court may freely review the trial court's application of constitutional principles in light of the facts found." *Id.* (internal citation omitted).

## III. ANALYSIS

### A.   We reverse the district court's decision denying Miramontes' motion to suppress and remand for fact-finding on whether Miramontes was unlawfully searched.

Miramontes argues the district court erred in denying her motion to suppress because her purse was searched without reasonable and articulable suspicion of wrongdoing, and she maintains Evans' Fourth Amendment waiver did not make the search of Miramontes' purse lawful. She also contends the evidence found in her purse and during the search of the spare bedroom should have been suppressed as fruits of the unlawful search. The State maintains that Miramontes' argument was not preserved for appeal. The State argues that even if some iteration of Miramontes' argument was presented below, it is still unpreserved because she did not receive an adverse ruling from the district court.

   *1.   Miramontes preserved her argument that the search of her purse was unlawful.*

We first address the State's preservation argument. The State contends Miramontes did not support her argument about the legality of the search with any cogent argument or authority below, but even if she did, she failed to obtain an adverse ruling from the district court on the legality of the search. According to the State, Miramontes argued only that evidence should be suppressed based on "an illegal *seizure*," but she did not otherwise claim her rights were violated through an unlawful search.

Miramontes moved to suppress "all evidence obtained through an illegal *seizure*." Her initial motion did not mention suppressing evidence from an illegal *search*. Yet her brief in support

4

of the motion to suppress included citation to a Utah Court of Appeals case in which a *search* was addressed. *See State v. Valdez*, 68 P.3d 1052 (Utah Ct. App. 2003). She alleged the intrusion on her Fourth Amendment rights was significant and specifically referenced the *search* of her property without her consent or a warrant. Miramontes put forth a substantive legal argument to suggest why the facts between her case and *Valdez* were similar. She maintained that what was "particularly interesting about the *Valdez* ruling and fact pattern is that the Utah Court of Appeals ruled the simple detention to be permissible; however, the subsequent identification and *search* was not permissible and that court suppressed the contraband found on Mr. Valdez." Later in the same brief, Miramontes argued, "[t]he [c]ourt should rule similarly to the court in *State v. Valdez*[.]" Before we address the merits of the State's preservation argument, we must first clarify the proper preservation standard for issues for appellate review in this and similar cases. We recently reiterated:

> This Court does not review an alleged error on appeal unless the record discloses an adverse ruling forming the basis for the assignment of error. . . . This is true [e]ven though an issue was argued to the court, [in order] to preserve an issue for appeal there must be a ruling by the court.

*Matter of Est. of Hirning*, 167 Idaho 669, 678–79, 475 P.3d 1191, 1200–01 (2020) (citations omitted). This rule set forth a standard that required appellants to obtain an adverse ruling to preserve an issue for appeal. Then last year, we again "clarified" our preservation standards and stated the rule thus: "both the issue *and a party's position on that issue* must be presented to the trial court before we will consider it on appeal." *State v. Wilson*, 169 Idaho 342, 347, 495 P.3d 1030, 1035 (2021) (emphasis in original). In *Wilson*, relying on *State v. DuValt*, this Court explained:

> An exception to the preservation requirement has been described by this Court in *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998). In *DuValt*, this Court noted that "when the issue was argued to or decided by the trial court," it is sufficiently preserved for appeal. *Id*. (Italics added.) We recently reaffirmed this exception in *State v. Jeske*, 164 Idaho 862, 868, 436 P.3d 683, 689 (2019).

*Id.* There was no reference in *Wilson* to a requirement that the trial court issue an adverse ruling to preserve an appeal. Thus, we have reached divergent holdings: one requires both an objection and an adverse ruling, while other, more recent pronouncements do not require such an adverse ruling.

We take this occasion to clarify that it is not mandatory for a party-appellant to obtain an adverse ruling from the trial court to preserve an issue for appellate review, so long as the party's

position on that issue was presented to the trial court with argument and authority and noticed for hearing. Thus, any prior holdings to the contrary, including, but not limited to *Choice Feed, Inc. v. Montierth,* 168 Idaho 124, 151, 481 P.3d 78, 105 (2021); *Matter of Estate of Hirning*, 167 Idaho 669, 678, 475 P.3d 1191, 1200 (2020); *Oswald v. Costco Wholesale Corp.*, 167 Idaho 540, 563, 473 P.3d 809, 832 (2020) are distinguished. While today's holding appears on its face to directly contradict, and thus abrogate the listed cases, we do not go that far because each case is distinguishable on its specific facts. The parties in those cases did not present the issue in question to the district court or they failed to provide an adequate record on appeal to establish that they had sufficiently presented the issue to the district court. As a result, absent an adverse ruling from the district court, there was no definitive issue to review on appeal in those cases. This case is different because the issue was presented and argued, giving the district court the opportunity to rule on it, even though it failed to do so.

As a result, we hold that a party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing *or* a party preserves an issue for appeal if the trial court issues an adverse ruling. Both are not required. But that said, this ruling should not be seen as carte blanche to make half-baked or cursory objections to preserve an issue for appeal. To be sure, obtaining an adverse ruling will always provide a better framework for appellate analysis. It remains the preferable course for the reasons set forth by the Court when the adverse ruling rule was originally recognized in 1940:

> To properly preserve and present to this [C]ourt claimed errors of this nature, timely and proper objection should be made, first so the trial court may have an opportunity to prevent or if possible eradicate such error by admonition or instruction, and second, that there be adverse ruling or action by the trial court for review by this court.

*Stewart v. City of Idaho Falls*, 61 Idaho 471, 103 P.2d 697, 700 (1940) (emphasis added). This statement of law, which addressed preservation in the context of a failure to object to argument presented at trial, highlights the importance of an adequate objection to the trial court so that the trial court may resolve or "eradicate" errors in that venue. It also notes that an adverse ruling or action by the trial court provides the basis for review by this Court. That a party must object and thereby create a record of the party's adverse contention below is axiomatic. It is foundational for appellate review. *State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010) (quoting *Puckett v. United States,* 556 U.S. 129, 134 (2009)) ("This limitation on appellate-court authority serves

6

to induce the timely raising of claims and objections, which gives the [trial] court the opportunity to consider and resolve them."). By objecting and providing a well-stated basis for such objection, trial courts are ordinarily

> in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from "'sandbagging'" the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.

*Puckett*, 556 U.S. at 134 (quotations and citations omitted).

We continue to uphold these principles and encourage advocates to adhere to them going forward. Indeed, the best practice dictates that the objecting party aim to obtain an adverse ruling to properly preserve the issue. That said, while an adverse ruling is best practice, and would have avoided the back-and-forth confusion in the record here, making the argument and stating the party's position on the argument to the trial court, supported with authority is enough to preserve the issue for appeal. Therefore, while we are abrogating a bright line adverse ruling rule, we note that attorneys who properly present their issue to the district court as described above but fail to secure such a ruling may undermine or impair their clients' position on appeal.

This discussion leads us to the State's preservation argument here. The question raised by the State is whether Miramontes argued, in her motion to suppress before the trial court, that she underwent both an unlawful search *and* seizure or if she only argued that she faced an unlawful seizure. For the reasons discussed below, we hold Miramontes preserved the argument that she was unlawfully searched *and* seized.

During oral argument below, Miramontes' counsel made additional argument about the search of Miramontes' purse. The district court tried to clarify—from both parties—the grounds for the motion to suppress and what the State was charging Miramontes with:

> [THE COURT:] So here's the first question: The drugs that are the basis of the charge -- there were drugs found in two places. There were drugs found in one of the purses, the pink flowered purse that was salmon or whatever, and back and forth we went. There were drugs, some drugs found in that -- in one of those, and there were drugs found in the bedroom where Ms. Miramontes was staying. My question is are the drugs you're seeking to suppress the drugs that were in the purse or in the bedroom? That's the first question.

> And related to that, . . . are the drugs that you charged this case for, were those the drugs in the purse or in the bedroom. . . ?

Miramontes' counsel responded that "if the [c]ourt were to suppress—or I should say if the [c]ourt were to find that the search was an illegal search…[a]nything connecting back to Ms. Miramontes I think ought to be suppressed." A few moments later, Miramontes' counsel continued: "So they get to finding all the stuff and associating her and everything, *because they've illegally searched the purse*, at least from the defense perspective. . . " (emphasis added).

Near the hearing's conclusion, the district court requested both parties supplement their briefing a second time. In this supplemental brief, Miramontes argued: "It is Ms. Miramontes' position that the evidence obtained from Officer LaVallee's search of the pink/salmon bag was the product of an *illegal search*, which was the conclusion of Ms. Miramontes' first Brief in Support of Motion to Suppress." (Emphasis added.) As a result, Miramontes made clear both in her supplementary briefing and at oral argument to the district court that she was arguing that both the search *and* seizure were unlawful. The district court simply failed to reach Miramontes' objections about the constitutionality of the search. Yet we do not fully fault the district court for failing to discern the full extent of Miramontes' arguments. As noted, the record is muddled in this regard. The written motion to suppress contained no mention of an illegal search; it was only raised later in Miramontes' supporting memorandum. The district court was concerned about the temporal relationship between the items found in the purse and those found in the spare bedroom. Indeed, the court requested two rounds of briefing to clarify the issue. But to now hold that Miramontes loses this appeal because her counsel failed to compel the trial judge to rule on her argument about the search would unduly penalize Miramontes for failing to obtain an adverse ruling when our case law did not clearly require her to do so.

While the emphasis of Miramontes' briefing below focused on the alleged illegality of the seizure, this Court's preservation standards are not so exacting as to foreclose an argument on appeal just because it was not the central focus of the appellant's argument below. Miramontes' argument that her search was also illegal was supported by argument and legal authority. She sufficiently raised the issue and supported it with cogent argument and authority below, to preserve it for appeal. *Wilson*, 169 Idaho at 495 P.3d at 1035 ("both the issue and a party's position on that issue must be presented to the trial court before we will consider it on appeal.").

  2. *We remand Miramontes' case to the district court for analysis under a complete Fourth Amendment framework.*

8

While we hold that Miramontes preserved her argument on appeal, we cannot reach the merits of her case because a record was not sufficiently developed below pertaining to the legality of the search. As a result, we reverse the district court's decision denying Miramontes' motion to suppress and remand the case for determination whether the search of her purse was unlawful and, if so, whether the evidence uncovered in the spare bedroom was fruit of that unlawful search.

Below, the district court based its decision on whether Miramontes' seizure was lawful. The parties now agree we resolved this issue in *State v. Phipps*, 166 Idaho 1, 454 P.3d 1084 (2019)[2] and thus we will not address it further here. Focusing on the alleged illegal seizure, the district court, the State, and Miramontes misapplied the appropriate framework to analyze a Fourth Amendment question, which resulted in insufficient factual development below and deflected what should have been a more complete analysis under the Fourth Amendment.

At the suppression hearing, the district court requested supplemental briefing from the parties when the arguments shifted toward fruit of the poisonous tree. In response, Miramontes' second brief focused on the inevitable discovery and independent source doctrines. But before considering, as the district court did, whether the fruit of the poisonous tree or inevitable discovery doctrines applied, the starting point should have been to determine (1) whether *the Fourth Amendment applied*, (2) whether the parties were arguing about a search, a seizure, *or both*, (3) whether Miramontes had standing to challenge the conduct; (4) whether a warrant was required, (5) if a warrant was required, whether exceptions to the warrant requirement were present; and (6) if the court concluded the Fourth Amendment was violated, what the proper remedy was. None of these questions was properly presented or assessed and each warrants serious consideration from the district court on remand.

## V. CONCLUSION

Based on the above, we reverse the district court's decision denying Miramontes' motion to suppress, vacate her conviction, and remand for analysis consistent with this opinion.

Justices BRODY, STEGNER, MOELLER, and ZAHN concur.

---

[2] In *Phipps*, this Court held that "officers have the categorical authority to detain all occupants of a residence incident to a lawful parole or probation search and to question them as long as the detention is not prolonged by the questioning." *Id*. at 8, 454 P.3d at 1091.