**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49244**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: April 14, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| DAVID JAMES WEST, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Patrick J. Miller, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

BRAILSFORD, Judge

David James West appeals from his judgment of conviction for felony possession of a controlled substance, Idaho Code § 37-2732(c). West argues the district court erred in denying his motion to suppress evidence because he contends an officer unlawfully prolonged the traffic stop. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

West does not contest the district court's very detailed factual findings. Those findings show that in January 2021, Officer Green observed a vehicle with an "odd" traffic pattern and began following it. While Officer Green was following the vehicle, he observed several traffic violations, including that the vehicle failed to use the closest available lane while turning, failed to signal before transitioning from lane to lane, and twice crossed over the dotted line by

1

approximately one foot into the oncoming lane of traffic. After the vehicle parked at a gas station, Officer Green activated his lights; parked behind the vehicle; and contacted the driver, West.

West identified himself and provided his driver's license; Officer Green requested West's proof of insurance and vehicle registration; and West then asked why he was stopped by Officer Green. While conversing about the traffic violations Officer Green had observed, West continued to search for the vehicle's registration and proof of insurance. While West searched for this documentation, Officer Green asked West whether he was on probation or parole; West replied he was on probation; and Officer Feldner appeared at West's driver's side door.

When West was unable to find his registration, he asked Officer Green to look up the registration. Officer Green responded he would not be able to look up proof of insurance, and West continued to search for proof of insurance. During West's continued search, Officer Green asked for consent to search the vehicle. West responded, "I have nothing to hide, do whatever you want." About two minutes later, West provided some documentation of his insurance, and Officer Green instructed West to "sit tight" and returned to the patrol vehicle.

Once in the patrol vehicle, Officer Green began inputting information into his Mobile Data Terminal. At 3:09:14 a.m., Officer Green accessed the website for the Idaho Department of Correction's online offender search (IDOC) database, mistyped the search, attempted again, and successfully accessed the database. Officer Green double-checked West's driver's license to verify his name and queried the database for information about him. The database returned a result, which Officer Green read aloud for the benefit of his on-body camera, stating that West was on parole.[1] Officer Green then closed the database at 3:10:14 a.m., one minute after his initial attempt to access the database.

After accessing and querying the IDOC database, Officer Green accessed the police department's internal database for information about West. The returned information showed that West's vehicle registration was valid. It also showed West's criminal history, and Officer Green noted aloud, "So, no insurance issues. Okay." After scrolling through the information on his screen, Officer Green began writing a traffic citation for West at 3:11:15 a.m.

---

[1]     The record is unclear whether West was on probation as he stated or on parole as Officer Green stated when receiving information from the IDOC database. The district court found that "neither the officers nor [West] were certain of [his] parole or probation status."

2

At the same time that Officer Green was in his patrol vehicle accessing the IDOC and internal police department databases and writing a traffic citation, Officer Feldner and Officer Lane, a drug-dog handler who had arrived at the scene, were conversing with West, who remained in his vehicle. During this time, Officer Feldner inquired whether West "had anything illegal in the car," and Officer Lane indicated he was going to conduct an exterior drug-dog sniff of West's vehicle and needed West to exit the vehicle.

Before allowing West to exit the vehicle, however, Officer Feldner inquired whether West had any weapons on him or had "anything illegal in [his] pockets." When West did not respond directly to this latter question, Officer Feldner continued to press West for an answer. At approximately 3:10:30, West admitted he had a needle on him. Subsequently, West admitted that the needle was "loaded," meaning it contained a controlled substance, and that he had a controlled substance on his person, including the type and amount of that substance. After discussing the controlled substance in West's possession, he exited the vehicle at 3:11:27 a.m. and was arrested. Meanwhile, after West's arrest, Officer Green remained in his patrol vehicle processing the traffic citation for West and exited the patrol vehicle at 3:15:09 a.m. After discussing the citation with West, Officer Green served it on West at 3:16:32 a.m., completing the traffic stop.

The State charged West with possession of a controlled substance and possession of drug paraphernalia and alleged a persistent violator enhancement. West filed a motion to suppress, arguing, among other things, that Officer Green unlawfully extended the duration of the traffic stop when he searched West's probationary status on the IDOC database before writing the traffic citation. At the evidentiary hearing, both Officers Green and Feldner testified, and the district court admitted their body camera videos into evidence. Following the suppression hearing, the court denied West's motion. The court found Officer Green's inquiry into West's probationary status in the IDOC database "was unrelated to the purpose of the stop but was nevertheless permissible." In support of this conclusion, the court ruled "Officer Green acted diligently and made the inquiry within the time he reasonably should have been able to issue a citation."

Following the denial of his suppression motion, West pled guilty to possession of a controlled substance and reserved his right to appeal the denial. West timely appeals.

3

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

West argues the district erred in denying his suppression motion because Officer Green "did not have reasonable suspicion to justify a deviation from the original purpose of the traffic stop" to check West's probationary status. The State argues "new reasonable suspicion developed before the traffic stop actually ended," i.e., West admitted to possessing drug paraphernalia, and as a result, Officer Green's minute-long inquiry into West's probationary status did not unlawfully extend the stop. In support, the State relies on *State v. Riley*, 170 Idaho 572, 514 P.3d 982 (2022), which the Idaho Supreme Court issued after West filed his opening brief in this appeal. West replies the State improperly raises for the first time on appeal its argument that the stop was "legally extended because new reasonable suspicion developed before the traffic stop actually ended."

### A.     Issue Preservation

As an initial matter, we address West's argument that the State failed to preserve its appellate argument. Appellate court review is limited to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). A party's specific arguments may evolve over time without raising the issue of preservation, as long as the substantive issue was properly raised before the trial court. *State v. Hoskins*, 165 Idaho 217, 224, 443 P.3d 231, 238 (2019); *State v. Gonzalez*, 165 Idaho 95, 98, 439 P.3d 1267, 1270 (2019). A party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court and noticing it for hearing *or* if the trial court issues

4

an adverse ruling.  *State v. Miramontes*, 170 Idaho 920, 924-25, 517 P.3d 849, 853-54 (2022).  "Both are not required."  *Id.* at 925, 517 P.3d at 854.

We disagree with West that the State failed to preserve its appellate argument.  For example, in opposition to West's suppression motion, the State argued "the purpose of a traffic stop is not permanently fixed at its inception for the duration of the detention, but may be transformed by evolving circumstances."  In support, the State cited *State v. Hays*, 159 Idaho 476, 362 P.3d 551 (Ct. App. 2015).[2]  In *Hays*, this Court addressed whether an officer's action of interacting with another officer for fifty-six seconds during a stop regarding a drug-dog sniff unlawfully extended that stop before Hays admitted possessing marijuana and transformed the stop's purpose into a drug investigation.  *Id.* at 483, 362 P.3d at 558.  The State argued that even if the officers' communications about the drug-dog sniff delayed the completion of the traffic citation (and thus the traffic stop), Hays admitted to possessing marijuana "before the citation should have been completed."  *Id.* at 484, 362 P.3d at 559.  In other words, because Hays produced the marijuana "before the citation was actually completed, there was no unlawful extension of the stop."  *Id.*

This Court agreed with the State's argument in *Hays*, noting the traffic stop's purpose transformed into a drug investigation before the traffic citation was issued and before it should have reasonably been issued.  *Id.*  Because the State in this case cited *Hays* to the trial court and noted a stop's purpose may be transformed, the State preserved for appeal its argument that "new reasonable suspicion developed before the traffic stop actually ended."  *See Miramontes*, 170 Idaho 920, 924-25, 517 P.3d 849, 853-54 (holding "a party preserves an issue for appeal by properly presenting the issue with the argument and authority to the trial court and noticing it for hearing").[3]

### B.     New Reasonable Suspicion

---

[2]     West argues *State v. Hays*, 159 Idaho 476, 362 P.3d 551 (Ct. App. 2015), "is no longer good law" in light of *State v. Linze*, 161 Idaho 605, 389 P.3d 150 (2016), and *State v. Pylican*, 167 Idaho 745, 477 P.3d 180 (2020).  We only discuss the State's reliance on *Hays*, however, to demonstrate that the State preserved its appellate argument.  In doing so, we do not decide the continuing validity of *Hays*, except to note that since *Hays*, the Idaho Supreme Court has continued to develop the law addressing the constitutionality of officers' deviations from the purpose of traffic stops.

[3]     Although the record does not indicate the State noticed West's suppression motion for a hearing, the district court held a hearing on the motion.

5

West argues Officer Green unlawfully prolonged the duration of the traffic stop when he checked West's probationary status in the IDOC database. A stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998).

A traffic-related seizure violates the Fourth Amendment if prolonged beyond the time reasonably required to complete the "mission" of issuing a ticket. *Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015); *State v. Karst*, 170 Idaho 219, 223, 509 P.3d 1148, 1152 (2022). In other words, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 U.S. at 350; *see Karst*, 170 Idaho at 224, 509 P.3d at 1153; *State v. Linze*, 161 Idaho 605, 608, 389 P.3d 150, 153 (2016).

Authority for a traffic-related seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Rodriguez*, 575 U.S. at 354; *Linze*, 161 Idaho at 609, 389 P.3d at 154. Tasks related to a traffic stop include, but are not limited to, addressing the traffic violation precipitating the stop; determining whether to issue a traffic ticket; and making ordinary inquiries incident to the stop, such as checking the driver's license and proof of insurance. *Rodriguez*, 575 U.S. at 354-55. Additionally, an officer may also "take certain negligibly burdensome precautions in order to complete his mission safely, such as asking for the driver and passenger to exit the vehicle and conducting a criminal record check." *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021) (quotation omitted).

When an officer deviates from the tasks related to the traffic infraction, the traffic stop may be unconstitutionally delayed or prolonged. *See, e.g., Karst*, 170 Idaho at 227, 509 P.3d at 1156 (ruling officer unlawfully delayed stop by taking nineteen seconds to request a drug-dog unit); *Linze*, 161 Idaho at 607, 389 P.3d at 152 (ruling officer unlawfully delayed stop by serving backup function for officer conducting drug-dog sniff). The Idaho Supreme Court, however, has held in *Riley*, 170 Idaho at 578, 514 P.3d at 988, that determining whether an officer's deviation

unlawfully prolonged a stop focuses on whether the conduct adds time "to the overall duration of the traffic stop." In *Riley*, Officer Kingland stopped Riley for a traffic violation. *Id.* at 574, 514 P.3d at 984. The Court found Officer Kingland deviated twice from the stop's purpose, including an eight-second deviation to inquire whether Riley had illegal substances in her vehicle and another twenty-second deviation to converse with backup officers who had arrived on the scene. *Id.* at 577, 514 P.3d at 987. Subsequent to these deviations, a drug dog alerted on Riley's vehicle providing reasonable suspicion for a drug investigation. *Id.* at 580, 514 P.3d at 990.

The *Riley* Court reiterated the inquiry focuses on whether the officer's deviation prolongs or adds time "to the overall duration of the traffic stop." *Id*. Focusing on the overall duration of the stop, the Court concluded that despite Officer Kingland's deviations from the stop, he did not prolong it unlawfully. *Id.* The Court reasoned that when the drug dog alerted on Riley's vehicle, it created new reasonable suspicion for a separate investigation before Officer Kingland completed the stop. *Id*. Because Officer Kingland required forty-eight seconds to complete the traffic stop after the drug dog alerted, the twenty-eight-second deviation did not unlawfully prolong the stop. *Id.* In other words, even if the twenty-eight-second deviation had not occurred, Officer Kingland would not have completed the stop until twenty seconds after the drug dog alerted, providing reasonable suspicion to conduct a drug investigation. *Id.* Accordingly, the Court concluded the deviations did not prolong or add time to the overall duration of the stop. *Id.*

As in *Riley*, Officer Green's deviation to check West's probationary status did not unlawfully prolong the traffic stop.[4] The district court found this deviation lasted one minute from 3:09:14 a.m. until 3:10:14 a.m. Meanwhile, at 3:10:30 a.m., West admitted to Officer Feldner that West had drug paraphernalia, i.e., a needle, in his possession, which provided new reasonable suspicion for a separate drug investigation. Officer Green did not complete writing the traffic citation until 3:15:09 a.m. and served it at 3:16:32 a.m. *See State v. Galindo*, ___ Idaho ___, ___, 522 P.3d 1284, 1288 (Ct. App. 2022) (ruling stop is completed when officer prepares, serves, and

---

[4]     For purposes of this appeal, the State does not dispute that Officer Green's inquiry into West's probationary status deviated from the tasks of the traffic stop. *See State v. Burgess*, 165 Idaho 109, 114, 440 P.3d 455, 460 (Ct. App. 2018) (holding task of verifying passenger's probation status unlawfully extended traffic stop but noting neither United States Supreme Court nor Idaho Supreme Court has addressed whether inquiry into driver's probation or parole status is within scope of permissible inquiries).

explains traffic citation). West does not dispute these findings.[5] Based on these findings, even assuming Officer Green had not deviated from the stop's purpose for one minute, he would not have completed the stop until 3:15:32 a.m. (3:16:32 a.m. minus sixty seconds), which would have occurred after West's admission to possession of drug paraphernalia. Accordingly, Officer Green's deviation did not prolong the stop unlawfully.[6]

## IV.

## CONCLUSION

The district court did not err by denying West's suppression motion. Accordingly, we affirm his judgment of conviction.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.

---

[5] West contends "the district court in this case performed none of the extensive analysis adopted by the district court in *Riley* in measuring whether the deviations by the police unlawfully extended the traffic stop." The district court in this case, however, did make very detailed, extensive factual findings allowing for consideration of the State's argument that Officer Green's one-minute deviation did not unlawfully prolong the traffic stop.

[6] Because we conclude Officer Green did not unlawfully prolong the traffic stop, we do not address the State's assertion West consented to the search.