# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50950-2023

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, June 2025 Term |
| | ) | |
| v. | ) | Opinion filed: August 20, 2025 |
| | ) | |
| BRANDON FRIAS, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Power County. Javier Gabiola, District Judge. Paul S. Laggis, Magistrate Judge.

The decision of the district court affirming the magistrate court is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Brian Dickson argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. Kale Gans argued.

_____

ZAHN, Justice.

Brandon Frias appeals from his judgment of conviction for misdemeanor firing timber or prairie lands, a violation of Idaho Code section 18-7004. During his jury trial, after the State had rested its case, Frias moved for a judgment of acquittal pursuant to Idaho Criminal Rule 29. The district court denied the motion and the trial proceeded. After the jury found Frias guilty, he filed a second motion for judgment of acquittal. The magistrate court again denied the motion. Frias appealed to the district court, which affirmed.

Now on appeal to this Court, Frias argues that the State failed to present sufficient evidence to meet its burden of proof. More specifically, Frias argues that Idaho Code section 18-7004 required the State to prove that (1) he was directly involved in the act of igniting the fire and (2) he acted with criminal negligence, but the State's evidence was insufficient to establish either element beyond a reasonable doubt. For the reasons discussed below, we conclude that Frias'

arguments are unpersuasive and affirm the district court's decision affirming the magistrate court's decisions denying Frias' motions for judgment of acquittal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2021, Frias and his acquaintance, Lucas Daniels, were driving through Idaho looking for work as welders. Frias had mobile welding equipment in the bed of his truck. Daniels wanted to practice his welding, so the men drove down a dirt road in the Cold Creek area of Power County, Idaho. The men arrived at a junction but decided to drive on because they saw a "no fires" sign. They drove further and eventually parked off the side of the road. Frias helped Daniels set up Frias' welding equipment and allowed Daniels to practice welding using the equipment. After Daniels began practicing, Frias returned to his truck to take a nap. Frias awoke to a fire that started while Daniels was engaged in welding activities.

Frias exited the truck and tried to help Daniels extinguish the fire by throwing a cooler of ice and a welder's jacket on the flames. The men were unable to contain the flames and drove away to save the truck and welding equipment. Daniels called 911 to report the fire. When an officer arrived on the scene, he found Frias in his truck and Daniels coughing from smoke inhalation. The officer took down the men's contact information and story of how the fire started and sent them to an ambulance down the road. After receiving medical care, the men were questioned by police and told officers that the fire was accidentally started while Daniels was engaged in welding activities. The fire grew substantially in size and destroyed two homes, one unoccupied residential structure, and many acres of sagebrush, trees, and grassland.

Frias and Daniels were each cited for misdemeanor firing timber or prairie lands in violation of Idaho Code section 18-7004. Frias pleaded not guilty and his case proceeded to trial. Three sheriff's deputies testified for the State. One deputy testified that he located Frias and Daniels near the site of the fire and that Daniels admitted to starting the fire while practicing welding activities. Another testified that it was warm, dry, and windy on the day of the fire but there was no official fire ban in effect. The last deputy testified that Daniels told him that he had minimal experience through a high school welding class, and that Frias told him that he helped Daniels set up the welding equipment and then took a nap in the truck while Daniels practiced.

After the State rested its case, Frias made an Idaho Criminal Rule 29 motion for judgment of acquittal. Frias argued that the State had not met its burden to prove that Frias willfully or carelessly set timber or prairie lands of the state on fire, only that he was in the proximity of the

fire that Daniels started. The magistrate court denied the Rule 29 motion, concluding that the evidence and testimony presented supported that the case should go to the jury to determine if Frias carelessly set or caused to be set on fire timber or prairie lands.

Later that same day, the magistrate court addressed Frias' objection to the court's proposed Jury Instruction No. 15, which set forth the elements of the misdemeanor offense at issue:

> In order for the defendant to be guilty of Firing Timber or Prairie Lands, the state must prove:
>
> 1. On or about 14th day of June 2021,
>
> 2. in the state of Idaho,
>
> 3. the defendant, Brandon Donato Frias, willfully or carelessly cause [sic] to be set on fire, any timber or prairie lands, and
>
> 4. did thereby destroy the timber, grass or grain on any such lands.
>
> If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

Frias argued that the language "carelessly" should be struck from paragraph 3 because the word suggested simple negligence. Frias argued that very few crimes subject a person to liability for simple negligence and that he did not believe section 18-7004 should be one of those crimes. The magistrate court rejected Frias' argument and concluded that Jury Instruction No. 15 was proper because carelessly was part of the statutory language. Frias did not request an instruction defining the term "carelessly."

Frias then presented his case. Frias testified, claiming that Daniels knew how to weld at a basic level. Frias claimed that Daniels wanted to practice his welding, so the men traveled down a dirt road to look for a place to weld. During cross examination, Frias admitted that the equipment belonged to him and he helped set up the equipment for Daniels to use, but he maintained that they set up the equipment in a dirt area where nothing could catch on fire.

The jury returned a guilty verdict. Frias later filed a renewed motion for acquittal and a motion for a new trial. In his motion for acquittal, Frias argued that: (1) the State failed to present substantial evidence that any of his acts "carelessly set on fire, or cause[d] to be set on fire" any timber or prairie lands; (2) Frias was not responsible for Daniels' acts; and (3) when all inferences are drawn in favor of the State, it may be possible that Frias' actions contributed to Daniels' negligent or careless acts, but that contributory effect did not rise to the level of criminal liability. The magistrate court issued a written decision denying both motions. In denying the motion for

acquittal, the court concluded that the State presented sufficient evidence to support the jury's verdict. The magistrate court sentenced Frias to a six-month suspended jail sentence and two years of probation and ordered Frias to pay court costs and perform 300 hours of community service in Power County. Frias was later ordered to pay restitution in the amount of $21,800.

Frias appealed to the district court. Relevant to this appeal, Frias argued that the magistrate court erred in giving Jury Instruction No. 15 and denying his motions for acquittal, and that section 18-7004 was unconstitutionally vague and overbroad as applied to Frias. On the first point, Frias argued that Jury Instruction No. 15 was improper for three reasons: (1) he could not be subjected to criminal liability for careless behavior that was not specifically defined by the statute; (2) the instruction was impermissibly vague because it failed to distinguish between willful or careless acts; and (3) the instruction was ambiguous because it allowed the jury to consider carelessness without identifying at least one specific act or omission that caused the fire. On the second point, Frias argued that the magistrate court erred in denying his motions for acquittal because none of the evidence could have led a jury to conclude that Frias engaged in an act or omission that caused the fire.

Following oral argument, the district court issued a written decision affirming the magistrate court. The district court concluded that Jury Instruction No. 15 was proper because the language matched the language used in section 18-7004. The district court also concluded that there was substantial evidence in the record to support Frias' conviction that he acted carelessly to cause the fire. The court declined to consider Frias' constitutional argument because it was not raised before the magistrate court and was not a fundamental error. Frias timely appealed.

## II.    STANDARDS OF REVIEW

When reviewing the decision of a district court sitting in its intermediate appellate capacity, we review the trial court record to "determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *State v. Dacey*, 169 Idaho 102, 106–07, 491 P.3d 1205, 1209–10 (2021) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). "If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure." *Id.* (quoting *Bailey*, 153 Idaho at 529, 284 P.3d at 973).

4

When reviewing the denial of a motion for judgment of acquittal, this Court "independently consider[s] the evidence in the record and determine[s] whether a reasonable mind would conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt." *State v. Wilson*, 172 Idaho 495, 500 n.1, 534 P.3d 547, 552 n.1 (2023) (emphasis omitted) (quoting *State v. Printz*, 115 Idaho 566, 567, 768 P.2d 829, 830 (Ct. App. 1989)). "We view the evidence in the light most favorable to the prosecution, and we do not substitute our judgment for that of the jury regarding the credibility of the witnesses, the weight of the evidence, and the reasonable inferences to be drawn from the evidence." *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007).

## III. ANALYSIS

Frias argues that the magistrate court erred in denying his two motions for acquittal and that the district court therefore erred in affirming those decisions. Frias asserts that the plain language of section 18-7004 required the State to prove that he was directly involved in the acts that ignited the fire and that he acted with criminal negligence. Frias asserts that the evidence presented at trial failed to meet that burden. In response, the State contends that Frias misreads the statute and that it presented sufficient evidence to support the jury's verdict. For the reasons discussed below, Frias' arguments are unpersuasive, and we affirm the district court's decision.

**A. The phrase "cause to be set on fire" as used in section 18-7004 refers to proximate causation and the State's evidence was sufficient to support the jury's verdict that Frias was a proximate cause of the fire.**

Frias' primary argument on appeal is that the magistrate court erred in denying his motions for acquittal because the plain language of section 18-7004 required the State to prove that Frias participated in the act that ultimately ignited the fire. Frias contends that the record is clear that he did not participate in the act of ignition because he was sleeping in his truck when the fire started. The State initially responds that Frias failed to preserve this argument. The State next argues that the statutory language "cause to be set on fire" is broad enough to include non-ignition actions that lead to a fire. The State argues there is substantial evidence in the record to support the jury's verdict on this element.

First, we hold that Frias' argument is preserved for appeal. Frias concedes that he did not specifically raise the argument that section 18-7004 required the State to prove that he participated in the act of ignition below. However, Frias argues that he did raise the substantive issue that the State failed to present sufficient evidence that his actions amounted to carelessly setting or causing

5

to be set on fire any prairie lands. He contends that the specific argument he now raises on appeal is simply a refinement of the substantive issue he raised below. We agree.

The crux of Frias' argument below was that he did not actually start the fire, so he should not be held criminally liable. The magistrate court understood that to be the crux of the case as well. Both parties and the magistrate court grappled with interpreting section 18-7004 and whether Frias' actions fell within the "carelessly set on fire, or cause to be set on fire" language in section 18-7004. Frias' argument on appeal further explains why his actions did not cause the land to be set on fire. We agree that this is a proper refinement of the argument presented below and therefore the argument is preserved for appeal. *See State v. Ramos*, 172 Idaho 764, 771–72, 536 P.3d 876, 883–84 (2023).

We now turn to the merits of Frias' argument, which raises an issue of first impression that requires us to examine the language of section 18-7004. Aside from some minor spelling changes, the statutory language has remained unchanged following its adoption by Idaho's Territorial Legislature in 1887:

> Any person who shall wilfully or carelessly set on fire, or cause to be set on fire, any timber or prairie lands in this state, thereby destroying the timber, grass or grain on any such lands, or any person who shall build a camp fire in any woods, or on any prairie, and leave the same without totally extinguishing such fire, or any railway company which shall permit any fire to spread from its right-of-way to the adjoining lands, is guilty of a misdemeanor.

I.C. § 18-7004; *see* Idaho Rev. Stat. § 6921 (Idaho Territory 1887).

"We begin statutory interpretation with the literal language of the statute, giving words their plain, usual, and ordinary meanings." *State v. Burke*, 166 Idaho 621, 623, 462 P.3d 599, 601 (2020). The statute applies to two distinct acts: "set on fire" or "cause to be set on fire." To set something on fire encompasses participation in the act of ignition. "Causing" something to be set on fire, however, does not necessarily require such participation. The plain meaning of the word "cause" denotes an element of causation. We therefore interpret the phrase "cause to be set on fire" to mean actions that cause a fire to start. The question then becomes which legal causation standard applies to section 18-7004.

> [T]he law recognizes several types of causation. To list a few examples, "actual cause is the factual question of whether a particular event produced a particular consequence"; but-for cause is used when "there is only one actual cause or where two or more possible causes are not acting concurrently"; true proximate cause addresses whether it was reasonably foreseeable that a result would flow from the

6

conduct; and sole cause is "the only cause that, from a legal viewpoint, produces an event."

*State v. Soliz*, 174 Idaho 571, ___, 558 P.3d 716, 720 (2024) (citation modified). "When a statutory provision includes an undefined causation requirement, [courts] look to context to decide whether the statute demands only but-for cause as opposed to proximate cause or sole cause. *Id.* at ___, 558 P.3d at 721 (quoting *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 769 (2024)). We look to other parts of the same statute to discern how a specific word or phrase is used. *Id.*

After reviewing section 18-7004, we hold that it provides for a proximate cause standard. The statute includes an intent element of "carelessly," which indicates an intent to incorporate tort concepts into the law. Dictionary definitions from the time the statute was enacted, along with caselaw from this Court and others, indicate that the plain meaning of the term "carelessly" as used in the statute is synonymous with the tort concept of negligence. While none of the law dictionaries at the time define the word "carelessly" or any variant of the word "careless," a lay dictionary defined "carelessly" as "[i]n a careless manner or way; negligently; heedlessly; without care or concern." *Carelessly*, Webster's Complete Dictionary of The English Language (1886).

Caselaw subsequent to the statute's enactment has equated the concept of carelessness with negligence. In 1910, this Court discussed "carelessness" as a component of negligence. *See Strong v. W. Union Telegraph Co.*, 18 Idaho 389, 406, 109 P. 910, 916 (1910) ("In many cases, however, 'gross negligence' is used to denote a degree of carelessness greater than the degree implied by 'ordinary negligence,' and one of which the law takes distinct legal cognizance."). While this Court has not previously defined the terms "carelessly" or "carelessness," other state appellate courts have held that the terms are synonymous with negligence. *See State v. Ayers*, 665 So. 2d 296, 299 (Fla. Dist. Ct. App. 1995), *aff'd*, 673 So. 2d 869 (Fla. 1996) (mem.); *State v. Tamanaha*, 377 P.2d 688, 690–91 (Haw. 1962); *State v. Jones*, 126 A.2d 273, 275–76 (Me. 1956); *State v. Hayes*, 70 N.W.2d 110, 113 (Minn. 1955). Based on these authorities, we conclude that the word "carelessly" as used in section 18-7004 is synonymous with the tort concept of negligence.

The tort concept of "carelessly" is followed by the phrase "cause to be set on fire." As previously noted, the use of the word "cause" denotes an element of causation in the crime. The use of tort and causation concepts in defining the crime indicates that proximate cause is the appropriate causation standard to apply. We hold that the statute's incorporation of tort concepts indicates that the statute demands a proximate causation standard.

The two elements of proximate cause are cause in fact and scope of legal responsibility. *Cramer v. Slater*, 146 Idaho 868, 875, 204 P.3d 508, 515 (2009)). As noted above, while actual cause involves a factual question of whether a specific event produced a specific consequence, "true proximate cause focuses on whether legal policy supports responsibility being 'extended to the consequences of conduct'" and addresses whether it was "reasonably foreseeable" that harm would come from negligent conduct. *Id.* (first quoting *Cramer*, 146 Idaho at 875, 204 P.3d at 515; and then quoting *State v. Corbus*, 150 Idaho 599, 602, 249 P.3d 398, 401 (2011)). Thus, this Court asks "whether the injury and manner of the occurrence are 'so highly unusual that we can say, as a matter of law, that a reasonable person, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur.'" *Id.* (alteration omitted) (quoting *State v. Lampien*, 148 Idaho 367, 374, 223 P.3d 750, 757 (2009)). A proximate cause standard does not require proof that Frias participated in the act of ignition; instead, it only requires proof that his actions produced the fire and that it was reasonably foreseeable that a fire would result from his actions.

We are unpersuaded by Frias' argument that the plain language of the statute requires participation in the act of ignition. Frias grounds his argument in his asserted definition of "set on fire," which he contends means "to cause something to start burning." He argues that one can only set something on fire by *directly* causing something to start burning. He argues that this required involvement in ignition carries over to the statutory language "causes to set on fire," which he claims applies to situations where one's actions *indirectly* cause something to start burning. Frias contends that this interpretation is supported by the remainder of section 18-7004, which he argues give two specific examples of actions covered by the statute, both of which require participation in the act of ignition.

First, nothing in the plain language of "cause to be set on fire" indicates that the actor must be directly involved in the act of ignition. As discussed above, the word "cause" denotes an element of causation, and the law recognizes several different types of causation. If the legislature intended that one only be held liable for direct or indirect involvement in the act of ignition, it could have said that. Idaho Code section 18-7005 prohibits throwing, depositing or leaving certain lighted materials "where the same may directly or indirectly cause a fire[.]" The legislature's failure to use similar language in section 18-7004 indicates it did not intend to limit liability to direct or indirect involvement in the act of ignition.

8

Second, the remaining language of section 18-7004 does not support Frias' position. Frias argues the statute provides two examples of prohibited conduct. In actuality, the language does not provide examples of prohibited conduct but rather identifies additional prohibited acts:

> Any person who shall wilfully or carelessly set on fire, or cause to be set on fire, any timber or prairie lands in this state, thereby destroying the timber, grass or grain on any such lands, **or** any person who shall build a camp fire in any woods, or on any prairie, and leave the same without totally extinguishing such fire, **or** any railway company which shall permit any fire to spread from its right-of-way to the adjoining lands, is guilty of a misdemeanor.

I.C. § 18-7004 (emphasis added). Nothing in the latter language concerning campfires and railways indicates that it limits the application of the "set on fire, or cause to be set on fire" language. For the reasons previously discussed, we conclude that the word "cause" as used in section 18-7004 requires that the individual's actions proximately cause the fire. Because we conclude that the plain language of the statute demands a proximate cause standard, we do not address Frias' alternative arguments concerning the statute's legislative history or the reasonableness of the lower courts' statutory interpretation.

Having determined that section 18-7004 demands a proximate cause standard, we now turn to whether the district court erred when it affirmed the magistrate court's decision denying Frias' motions for acquittal. We recognize that neither the magistrate court nor the district court construed the word "cause" in section 18-7004 to require the State to prove that Frias' actions proximately caused the fire. However, this does not prevent us from applying our standard of review, which requires us to examine the evidence presented at trial in the light most favorable to the prosecution and determine whether the evidence was sufficient to permit a reasonable person to "conclude that the defendant's guilt as to each material element of the offense was proven beyond a reasonable doubt." *State v. Wilson*, 172 Idaho 495, 500 n.1, 501, 534 P.3d 547, 552 n.1, 553 (2023) (citations omitted).

We conclude that the evidence is sufficient to uphold the jury's verdict as it relates to the proximate cause element. The evidence presented at trial through the testimony of law enforcement and Frias established the following:

- On the date of the fire, Daniels was 19 years old and an inexperienced welder.
- Frias believed Daniels knew something about welding but also knew that Daniels had been practicing his welding.

9

- Frias either drove Daniels to the location of the fire or allowed Daniels to drive Frias' truck to that location.

- Frias permitted Daniels to use Frias' welding equipment to practice cutting pipe.

- The weather that day was warm and windy.

- Frias stopped at a place that he initially deemed "perfect" but opted to move to another location after seeing a "no fires" sign.

- On cross-examination, Frias admitted that the place he initially deemed as perfect may not have been a perfect place to weld that day.

- Daniels chose the second location where they stopped.

- Daniels told a deputy that there was dry grass in the second area.

- Frias told a deputy that he would not have welded at the second location.

- Frias brought nothing to extinguish a possible fire, aside from a cooler that had some water and ice.

- Frias helped Daniels set up the welding equipment at the second location, showed him how to turn the equipment on and off, and then returned to the cab of the truck and fell asleep.

- Daniels practiced cutting pipe off the back of the truck and started a fire while Frias was sleeping in the truck.

Frias disputed the deputies' testimony on several of the above points. But viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient to permit a reasonable person to conclude, beyond a reasonable doubt, that Frias' actions proximately caused the fire. A reasonable person could conclude beyond a reasonable doubt that Frias was a cause in fact of the fire. A reasonable person could also conclude that it was reasonably foreseeable that a fire would result from Frias' actions. We therefore affirm the district court's decision affirming the magistrate court's decisions denying Frias' motions for acquittal on the causation element of section 18-7004.

**B. The State was required to establish that Frias acted with criminal negligence and presented sufficient evidence to establish beyond a reasonable doubt that he did so.**

Frias' second argument on appeal concerns the intent element of the statute. He argues that the State was required to demonstrate that he acted with criminal negligence, but instead its evidence only established ordinary negligence, which is a lesser standard. The State responds that

Frias' argument is unpreserved. If his argument is preserved, the State contends that section 18-7004 does not require criminal negligence, but instead only requires that Frias act "willfully or carelessly" and the evidence was sufficient to prove beyond a reasonable doubt that Frias acted carelessly.

We begin with preservation. "[A] party preserves an issue for appeal by properly presenting the issue with argument and authority to the trial court below and noticing it for hearing *or* a party preserves an issue for appeal if the trial court issues an adverse ruling." *State v. Miramontes*, 170 Idaho 920, 924–25, 517 P.3d 849, 853–54 (2022). "[S]ubstantive issues may not be raised for the first time on appeal because allowing new issues on appeal would change the function of the appellate courts[.]" *State v. Gonzalez*, 165 Idaho 95, 98–99, 439 P.3d 1267, 1270–71 (2019) (citing *State v. Garcia-Rodriguez*, 162 Idaho 271, 276, 396 P.3d 700, 705 (2017)). However, "[a] party may refine issues that they have raised below with additional legal arguments so long as the substantive issue and the party's position on that issue remain the same." *State v. Radue*, ___ Idaho ___, ___, 564 P.3d 1230, 1249 (2025) (quoting *Siercke v. Siercke*, 167 Idaho 709, 715–16, 476 P.3d 376, 382–83 (2020)).

We hold that Frias did enough to preserve his criminal negligence argument for appeal. The State's preservation argument focuses on Frias' failure to request a jury instruction on criminal negligence below. While this is true, Frias repeatedly argued that careless or negligent conduct was insufficient to hold him criminally liable because the law generally requires criminal negligence to impose criminal, rather than civil, liability. We conclude that Frias' argument was sufficient to preserve his sufficiency of the evidence argument on intent for appeal.

Turning to the merits, we have held that "the power to define crime and fix punishment therefor rests with the legislature, and that the legislature has great latitude in the exercise of that power." *State v. Ahmed*, 169 Idaho 151, 163, 492 P.3d 1110, 1122 (2021) (quoting *Malloroy v. State*, 91 Idaho 914, 915, 435 P.2d 254, 255 (1967)). "The mental state that is required for the commission of a particular offense is determined by the language of the statute defining that offense." *State v. Dolsby*, 143 Idaho 352, 354, 145 P.3d 917, 919 (Ct. App. 2006).

Frias grounds his argument concerning criminal negligence in Idaho Code section 18-114 and this Court's decision in *State v. McMahan*, 57 Idaho 240, 65 P.2d 156 (1937). Idaho Code section 18-114 provides: "In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." I.C. § 18-114. In *McMahan*, we held that

11

while Idaho's involuntary manslaughter statute suggested one could be convicted of that crime for an act of ordinary negligence, section 18-114[1] was clear that one can only be held criminally liable for an act of criminal negligence:

> Section 17-1106, defining involuntary manslaughter, and particularly that part of it which makes felonious the commission of a lawful act which might produce death, without due caution and circumspection, must be read and construed together with section 17-114, which provides: "In every crime of public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." In order to properly construe that section, full force and effect must be given to the qualifying word "criminal," used in connection with the word "negligence."

> The term "criminal negligence," as used in that section, does not mean merely the failure to exercise ordinary care, or the degree of care which an ordinarily prudent person would exercise under like circumstances. It means gross negligence. It is such negligence as amounts to a reckless disregard of the consequences and rights of others.

> . . . .

> The legislature did not intend every act done negligently, resulting in what would have been a crime if done intentionally, to be criminal because of the negligence, but intended only to constitute such acts criminal in the event such negligence amounted to the degree contemplated by section 17-114. If it had been the intent of the legislature to make an act criminal, because of want of ordinary care on the part of its perpetrator, the word "negligence" would have been used in section 17-114, and the word "criminal" would have been omitted therefrom.

*McMahan*, 57 Idaho at 256–58, 65 P.2d at 162–63.

The State responds that Frias was not entitled to a jury instruction concerning section 18-114 because such an instruction is only required for a general intent crime. The State contends that section 18-7004 is a specific intent crime due to its requirement that one "wilfully or carelessly" set something on fire or caused something to be set on fire. As a result, Frias was not entitled to an instruction on criminal negligence, nor did he request an instruction on criminal negligence.

The State misperceives Frias' argument on appeal. He is not asserting that the magistrate court erred by failing to instruct the jury on criminal negligence. Instead, he argues that he could not be convicted for acting negligently. Instead, section 18-114 and this Court's decision in *McMahan* required the State to prove that he acted with criminal negligence. Put differently, Frias

---

[1] At the time we decided *McMahan*, the code sections cited in the opinion were codified in title 17. Following that decision, Idaho's criminal code was recodified in title 18. So the section 17-114 discussed in *McMahan* is now found at section 18-114.

argues that section 18-114 and *McMahan* require that the term "carelessly," as used in section 18-7004, be construed to require a showing of criminal negligence.

While we agree with Frias that *McMahan* and section 18-114 are starting points for our analysis, they are not the end of the analysis. Following our decision in *McMahan*, we held that the legislature could enact statutory language that set forth an intent standard requiring something less than criminal negligence. *State v. Long*, 91 Idaho 436, 442, 423 P.2d 858, 864 (1967). In *Long*, we considered a 1965 statutory amendment to the involuntary manslaughter statute, which added language criminalizing the unlawful killing of a human being "[i]n the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence." *Id.* at 438, 423 P.2d at 860 (quoting Act of Mar. 13, 1965, ch. 136, 1965 Idaho Sess. Laws 268, 268–69). The defendant asserted the language was unconstitutionally vague, relying in part on our decision in *McMahan*. We held that the 1965 amendment indicated a legislative intent to depart from existing law and recognized that the legislature could choose to impose a standard lesser than criminal negligence. *Id.* at 441–42, 423 P.2d at 863–64. As a result, our analysis of the appropriate intent standard for section 18-7004 must also examine whether the legislature has amended the statute following *McMahan* to provide for an intent standard lesser than criminal negligence.

After reviewing the history of section 18-7004, we hold that the term "carelessly" required the State to prove that Frias acted with criminal negligence at the time he caused the land to be set on fire. This conclusion is compelled by our holding in *McMahan* and the fact that section 18-7004 has not been amended since it was first enacted in 1887. As previously discussed, the term "carelessly" is synonymous with negligence. Our 1937 holding in *McMahan* directs that an individual cannot be held liable for ordinary negligence in light of the criminal negligence standard set forth in section 18-114. Following that decision, the legislature made no amendments to the statute to impose a lower intent standard.

Once again, we recognize that neither the district court nor the magistrate court interpreted the carelessly element of section 18-7004 to impose a criminal negligence intent standard. However, this does not prevent us from evaluating whether there was sufficient evidence presented at trial to permit a reasonable trier of fact to conclude that the State established beyond a reasonable doubt that Frias acted with criminal negligence. *See State v. Wilson*, 172 Idaho 495, 500 n.1, 534 P.3d 547, 552 n.1 (2023). We have described the criminal negligence standard as "gross negligence, such negligence as amounts to a wanton, flagrant or reckless disregard of

13

consequences or wilful indifference of the safety or rights of others, which may be by either or both commission or omission." *State v. Taylor*, 59 Idaho 724, 735, 87 P.2d 454, 459 (1939) (citations omitted).

Frias argues that his conduct did not rise to criminal negligence because he took steps to account for that risk of accidental fire, such as not setting up his equipment at the area with the "no fire" sign and choosing to set up in a dirt spot surrounded by green vegetation. We conclude the evidence was sufficient to permit the jury to conclude otherwise.

The jury was entitled to believe the testimony of the officers over that of Frias. The testimony and evidence presented at trial established that it was a warm and windy day. Bodycam video introduced by one of the officers depicts green, lush plant growth along the roadway, but depicts drier growth in the vicinity of the smoke from the fire. Daniels told an officer that there was dry grass where he was welding. Frias told an officer that he would not have welded at the location. Frias testified to seeing a "no fires" sign at the first place they stopped. Frias was aware that Daniels was not an experienced welder and was aware that Daniels was going to practice cutting pipe in the area. Frias had no way to put out a fire besides a cooler with some ice.

Viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable juror could conclude that the State established that Frias acted with reckless disregard for the rights of others when he caused the land to be set on fire. On this basis, we affirm the district court's decision affirming the magistrate court's decisions denying Frias' motions for acquittal.

## IV.    CONCLUSION

For the reasons discussed herein, we affirm the district court's decision.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.