Filed 7/31/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ANTERION DANTELAMAR SUGGS,<br><br>　　　　Defendant and Appellant. | C096555<br><br>(Super. Ct. No. 21FE008798) |

APPEAL from a judgment of the Superior Court of Sacramento County, Thadd A. Blizzard, Judge.  Reversed.

Joseph M. Ahart, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Dina Petrushenko, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Anterion Dantelamar Suggs appeals from a judgment following entry of a plea of no contest to misdemeanor possession of a concealed firearm after the trial court denied his motion to suppress evidence of the firearm and methamphetamine found in his vehicle. On appeal, defendant argues the detention that preceded the search of his vehicle was unlawful under the Fourth Amendment. We will reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2021, Sacramento Police Officer Owen Anstess saw defendant driving a car that displayed only paper plates in violation of Vehicle Code section 5200 that requires a vehicle to attach license plates to both the front and back of the vehicle. Since Officer Anstess did not see any registration or recent purchase documents displayed, he initiated a traffic stop of defendant. Officer Anstess would not have stopped the car if he had seen the paperwork displayed in the window as required by law.

When Officer Anstess walked up to the vehicle to speak with defendant, he saw temporary registration documents attached to the darkly tinted rear window. Anstess testified that the display of these documents satisfied the legal requirement for vehicles with paper license plates. After seeing the temporary registration documents, Officer Anstess questioned defendant about the purchase of the vehicle, and defendant provided the out-of-state purchase paperwork. As he reviewed the paperwork, Officer Anstess asked questions about where defendant and his passenger were headed, then returned the paperwork to defendant, and asked defendant if he had identification on him. Defendant provided his driver's license to Officer Anstess, who asked defendant for his current address, and then proceeded to ask the passenger if he had identification. Defendant's passenger gave his driver's license to Officer Anstess as defendant asked, "is this necessary?" Officer Anstess explained to defendant that he was pulled over for having paper plates and because he could not see the paperwork in his vehicle's window.

Officer Anstess asked if there was anything "crazy in the car [he] needed to know about," whether defendant or his passenger were on parole or probation, and whether

2

defendant or his passenger had been arrested previously. Defendant voluntarily responded to these questions. Officer Anstess asked defendant if he could search his vehicle, and defendant declined because he was "just trying to get on [his] way."

Officer Anstess went back to his patrol vehicle then returned to defendant's vehicle and informed defendant and his passenger that they both had suspended licenses, the passenger was on probation for "possession of firearms stuff and a couple other things," and he was going to conduct a probation search. During the probation search, Officer Anstess discovered a concealed firearm and ammunition in a satchel on the floor behind defendant's seat that was within the passenger's reach. Based on that discovery, Officer Anstess searched the entire vehicle and found a scale and a cigarette box holding 30 pills of a controlled substance in a compartment near the steering wheel.

The People charged defendant with possession of a concealed firearm (Pen. Code, § 25400, subd. (a)(1); count one), possession of methamphetamine with intent to sell (Health & Saf. Code, § 11378; count two), and possession of methamphetamine while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count three). Defendant moved to suppress the firearm and methamphetamine found in his vehicle. The trial court denied his motion. In denying defendant's motion to suppress in a written order, the trial court found the passenger voluntarily provided his identification, the warrant checks of the passenger and defendant were simultaneous, and warrant checks are a permissible part of traffic stops as long as they "d[o] not unduly prolong the traffic investigation." As there was no specific evidence of how long it took to complete the warrant checks alone, and "nothing in the record indicate[d] any delay or unusual time spent on them," the trial court concluded the stop was lawful.

Defendant then pled no contest to misdemeanor possession of the concealed firearm.[1] The trial court sentenced defendant to 90 days in county jail and one year of informal probation. Defendant timely appealed. After additional time to secure the augmented record, and multiple granted requests by the parties to continue the briefing schedule, the case was fully briefed on April 11, 2023, and assigned to this panel shortly thereafter.

DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress, because the detention was unlawfully prolonged. Specifically, defendant claims that once Officer Anstess noticed the proper documentation attached to his vehicle's rear window and thus learned that the reason he had stopped defendant was invalid, any further detention was unlawful.[2,3] We agree the detention became unlawful when (1) the purpose of the stop completely dissipated (when the officer saw the documents in the window and thus realized that defendant had not committed the Vehicle Code violation that was the purpose of the stop), and (2) the officer then made inquiries aimed at finding evidence of ordinary criminal wrongdoing.

When reviewing a trial court's decision on a motion to suppress, the reviewing court must "defer to its factual findings if supported by substantial evidence" but must

[1] Because defendant was initially charged with felonies, we have jurisdiction over his appeal even though he was ultimately convicted only of a misdemeanor. (*People v. Nickerson* (2005) 128 Cal.App.4th 33, 36; Pen. Code, § 691, subds. (f), (g).)

[2] In a footnote, the People claim this argument is a departure from defendant's argument in the trial court and thus this claim is forfeited, but proceeds to address the claim on the merits. We conclude the issue was adequately preserved in the trial court.

[3] Defendant also preemptively argues the odor of marijuana did not justify further detention. Since the People did not actually make this argument, and we conclude the detention should have ended before the records check, it is unnecessary to address this claim.

4

"independently assess the legal question of whether the challenged search or seizure satisfies the Fourth Amendment." (*People v. Brown* (2015) 61 Cal.4th 968, 975.)

"A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." (*Arizona v. Johnson* (2009) 555 U.S. 323, 333.) When determining the lawful duration of a traffic stop, courts should "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." (*United States v. Sharpe* (1985) 470 U.S. 675, 686.)

"A seizure for a traffic violation justifies a police investigation of that violation." (*Rodriguez v. United States* (2015) 575 U.S. 348, 354.) The "tolerable duration [of the traffic stop] is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop." (*Ibid.*) "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' [Citation.] Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." (*Id.* at p. 355.) Such checks are included in the scope of an officer's mission in conducting a traffic stop because they "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." (*Ibid.*) Further, to detect " 'evidence of ordinary criminal wrongdoing' " an officer also "may conduct certain unrelated checks during an otherwise lawful traffic stop." (*Ibid.*) But "not . . . in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." (*Ibid.*)

Officer Anstess saw the temporary registration documents when he walked up to the car to speak with defendant and would not have initiated the stop at all if he had seen the temporary registration. At that point, as he acknowledged at the suppression hearing, his initial reasonable suspicion of a Vehicle Code violation was completely dispelled and

he had no basis for writing a citation. Contrary to defendant's claim, once Officer Anstess saw the temporary registration documents in the window, he was not required to simply walk away. Rather, he was permitted to approach the car and explain to defendant why he stopped him. (*United States v. McSwain* (10th Cir. 1994) 29 F.3d 558, 561-562.)

What he was *not* permitted to do, however, was prolong the stop by conducting inquiries aimed at finding evidence of criminal wrongdoing separate and apart from the perceived violation. (*Rodriguez v. United States*, *supra*, 575 U.S. at p. 355; *id*. at p. 357 ["The critical question . . . is not whether" the separate inquiry "occurs before or after the officer issues a ticket . . . but whether conducting [it] 'prolongs'—*i.e.*, adds time to—'the stop' "].) Because Officer Anstess did prolong the stop after he had discovered that he had no basis for writing a citation based on any observation he had made up until that time, Officer Anstess's seizure of defendant became unlawful at that moment, and a *subsequent* check for outstanding warrants did not cure the constitutional infirmity. (See *State v. Karst* (2022) 170 Idaho 219, 226-227 [under *Rodriguez*, a stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop to which that reasonable suspicion is related; but once the officer deviates from the original purpose of the stop, the Fourth Amendment is violated unless there is new reasonable suspicion or probable cause to justify the new purpose of the seizure].)

In denying the suppression motion, the trial court erred in failing to appreciate the constitutional significance of Officer Anstess's inquiries unrelated to the purpose of the stop, particularly given the officer's candid acknowledgment that he became aware upon approaching the vehicle that there was no violation. (*State v. Karst*, *supra*, 170 Idaho at p. 227 ["instead of continuing activities related to the traffic stop's mission, [the officer] spent approximately nineteen seconds on his radio with dispatch to request a drug-dog unit"—a "detour" that impermissibly "added time to, or prolonged, completing the original purpose for the stop"].) And because the probationary search providing lawful

6

cause to search the vehicle and the subsequent discovery of the firearm and methamphetamine were the direct product of the unlawfully prolonged detention, we thus reverse the trial court's denial of defendant's motion to suppress. Because it is impossible to assess the impact of an erroneous denial of a motion to suppress evidence on a defendant's decision to plead guilty, the harmless error rule is inapplicable in appeals taken pursuant to Penal Code section 1538.5, subdivision (m). (*People v. Miller* (1983) 33 Cal.3d 545, 556; *People v. Hill* (1974) 12 Cal.3d 731, 767-769, overruled on other grounds in *People v. DeVaughn* (1977) 18 Cal.3d 889, 896, fn. 5.) Accordingly, the judgment must be reversed.

### DISPOSITION

The judgment is reversed, the conviction is vacated, and the matter is remanded. On remand, the trial court shall vacate its order denying defendant's motion to suppress the evidence and shall enter a new order granting that motion.

/s/
BOULWARE EURIE, J.

We concur:

/s/
DUARTE, Acting P. J.

/s/
MESIWALA, J.